### SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY v. FANNIE LONG ET AL.

Decided November 23, 1898

**1. Action for Death of Parent.**

Pecuniary damages may be caused to children by the negligent killing of their mother, although she had no income except from an estate which went to the children upon her death, where through superior management of her estate she was able to provide at all times and did provide in an increasing degree for the wants and necessities of the children, married and unmarried.

**2. Same—Pecuniary Loss.**

The damages recoverable by children for the negligent killing of their mother are not necessarily confined to such pecuniary benefits as would have been produced by mental or bodily labor of the deceased.

**3. Charge of Court—Request for, Necessary When.**

The rule that requires the trial court to submit an issue to the jury when its attention is called thereto, although there is no formal request for a charge thereon, does not apply where the matter is practically submitted or involved in the charge given, in which case, if a more direct, pointed, or explicit submission is required, it should be asked by a correct one, framed by the party asking it.

APPEAL from Bexar.   Tried below before Hon. J. L. CAMP.

*Upson, Bergstrom & Newton,* for appellant.

*Franklin, Cobbs & McGown,* for appellee.

JAMES, Chief Justice.—This case has already been before the appellate courts,—see Railway v. Long, 26 Southwestern Reporter, 114, and 87 Texas, 148,—and it is unnecessary here to explain its nature.

The first and second assignments are disposed of by the opinion reported in 87 Texas.

The fourth assignment goes upon the theory that "there was no testimony that the deceased aided in the support or maintenance of plaintiffs or either of them by the rendition of services of a pecuniary value, nor testimony that she gave any article of value other than money to any of the plaintiffs."

It will be seen from the testimony hereinafter set forth that by Mrs. Long's death they lost the benefit of her services, for she is shown to have been holding and managing her estate practically in the interest of her children, and this, with all its attendant advantages to them, they lost by her death. It will also be seen that there was testimony that she gave to some of the plaintiffs articles of value. This disposes of all that is contended for under the fourth assignment.

We may in this connection, as well as any other, state the evidence which relates to plaintiff's damages, to wit, that of Fannie Long:

"M. C. Long was worth in property at the time of her death about $18,500. This property was situated in Texas and Georgia. She owned two lots and improvements in San Antonio and a farm in Georgia, and had some money loaned out at interest. M. C. Long resided in San Antonio, Texas, at the time of her death. She had a home of her own in that city. She was only 62 years old at the time of her death, and her health was good prior to her death. Neither the father nor mother of said M. C. Long were living at the date of her death. Her mother died in childbirth at the age of 28; her father lived to be 84, and then died from a fall on the ice, January 6, 1877. Said M. C. Long aided in the support of all of her said children. Her house was a home for any and all of them whenever they desired to make it so. Fannie Long, Emma Long, and Eugenia Long lived with her when not absent from home. She also furnished Emma Long money for her support and paid for medicines and medical attention when needed. She also aided in the support of said Florence Bartow by remitting money to her at different times. She aided Arthur Long in the same way, and she also aided Edward Long with money, and also assisted him in the support of his children by giving them presents of clothes, etc. She was a woman of simple tastes and habits, and was always ready to aid her children with her means whenever they needed it. Said M. C. Long had a regular income from the rents of her property and money loaned at interest. She devoted said income to herself and children, and if she had any surplus save what was needed for those purposes she would reinvest it.

The feeling between said M. C. Long and her children was very affection-
ate. M. C. Long had been a widow upwards of ten years at the time of
her death. She managed her property after her husband's death in per-
son or by agents. She made her own investment of money. She was a
good business woman; she was economical, safe, and prudent in her busi-
ness affairs. At her death she left no debts."

To cross-interrogatories: "I am one of the plaintiffs in this suit. I
can not state definitely how much money M. C. Long sent to J. L. Bartow
and his wife; she sent money at different times and different amounts.
The times and amounts I can not tell with certainty. I know that when
she received rents she would try and make an equitable division between
her children in proportion to their wants. Bartow and wife were married
November 10, 1884. M. C. Long did not send them a certain income, but
at different times during the year she would say, 'Here is so much money
Florence ought to have,' and would send it to Mrs. Bartow. Owen Har-
per and wife were married November 6, 1888. M. C. Long was not liv-
ing at the time they were married, and therefore did not aid in their
support after they were married. M. C. Long left no children except
those who are plaintiffs in this suit. M. C. Long had no income except
from property owned by her as heretofore stated, that was land and notes
for money loaned during her stay in San Antonio. Mrs. Long had at
different times money deposited at D. & A. Oppenheimer's, Traders'
National Bank, San Antonio National Bank, and Maverick Bank. Some
of the deposits were made in my name. I suppose any banker in San An-
tonio cashed such of her checks on banks where she had deposits as may
have been presented for that purpose. Frequently money received from
Georgia was not deposited in any bank, but kept at home for household
and other expenses. I knew M. C. Long's father, not her mother. I was
present when her father died. I know of her mother's death by the state-
ment of my mother and by the family history. At the time M. C. Long
was killed she was not leaving San Antonio for her health, and she was
not over 70 years of age and in feeble health. I could not state the exact
amount M. C. Long contributed to the support of her children nor how
often it was paid. It was paid in different ways, sometimes in cash,
sometimes by furnishing board and lodging, and sometimes by supply-
ing clothes, medicines, etc. I know she had an income of about $1800
per annum above taxes and insurance, and that she spent that amount in
the support of herself and children; that her tastes were simple and that
it cost her not more than $250 per annum to live, and that she endeav-
ored to divide what she did not need in her own support between her
children as equally as she could."

The evidence showed benefits which were lost to the daughters by the
death of Mrs. Long, notwithstanding they received her property and in-
come by devise, and as to the sons, they practically received none of the
property or income (having been bequeathed $50 each). The ability of
Mrs. Long to manage the property and the keeping of it intact and profit-

ably invested was lost to her children when she died, and this loss, in view of her disposition toward plaintiffs and the fact that during the period of her probable life with the property in her management, the conditions of even those who received her estate would have been better, during that period and afterward, was a matter for the jury to consider. The fact that she, through superior management of her estate, was able and ready at all times and in an increasing degree to provide for the present or possible necessities of plaintiffs, even to the furnishing of a home for them, was a matter of loss, not replaced or set off by the property received upon her death.

The opinion of the Supreme Court on this case suggests other forms of damage which might be taken into account in dealing with probabilities, and which are not affected by the fact that plaintiffs received the estate.

The fifth, sixth, seventh, and eighth assignments may be disposed of together. It was probably a right of defendant to have the jury instructed as to the effect of a devise of Mrs. Long's property to her children, upon their loss in respect to revenues derived by them in her lifetime from her property itself, but if this be so it was necessary that such an instruction should have been requested. The charge of the court nowhere mentions this subject in terms, but the fact of their having received the corpus of deceased's property was in evidence, and the court throughout allows the jury to consider only pecuniary losses, which was practically a charge not to allow for benefits which plaintiffs received from Mrs. Long's property in her lifetime when the property itself came to them upon her death, for they would naturally not be damaged in the loss of revenues from property, when they had the property itself. That the jury did view the matter in this light is evident from the verdict, which awards the four daughters who received the estate only a fraction of what was awarded the sons, who did not. By the fifth assignment it seems to be contended that the court erred in not giving a charge as indicated, but as above stated, we think it was necessary for defendant to have requested such a charge. It is further urged that certain charges asked by defendant (numbers 1 and 2) called the attention of the court to the necessity of submitting such issue. This rule of practice, as understood by us, does not apply where the matter is practically submitted or involved in the charge given, in which case, if a more direct, pointed, or explicit submission of a matter is required, it should be asked by a correct one framed by the party asking it.

The charges 1 and 2 asked by appellant and referred to in this connection are made the subject of the sixth and seventh assignments. These charges and the one mentioned in the eighth assignment all seek to confine recovery in this case to such pecuniary benefits as would have been produced by mental or bodily labor of the deceased. This charge has been considered and was held by the Supreme Court to be incorrect. 87 Texas, 159.

The verdict of $250 in favor of each of the daughters, and $1000 in favor of each of the sons, is not clearly excessive. The judgment is affirmed.

*Affirmed.*