BEAUMONT, SOUR LAKE & WESTERN RAILROAD COMPANY v. G. P. OLMSTEAD.

Decided May 19, 1909.

**1.—Verdict—Damages—Reversal.**

Where, in an action for damages for personal injuries, there is nothing in the amount of the verdict or the record to indicate that the jury were actuated by passion or prejudice or other improper motive, their finding as to the amount of the award must be taken as conclusive. The power of the appellate tribunal to reverse a verdict is not arbitrary.

**2.—Same—Personal Injuries.**

Evidence held to justify a verdict awarding damages for personal injuries in the sum of twenty thousand dollars.

**3.—Master and Servant—Presumption—Burden of Proof—Case Followed.**

Every person who is found performing the work of another is presumed to be in the employ of the person whose work is being done, and if the facts be such as to exempt the owner of the property improved or the person for whom the work is being performed from liability for the acts of those performing such work, it devolves upon him who claims such exemption to make proof of the terms of the contract, showing that the relation of master and servant does not exist. Following Taylor B. & H. Ry. Co. v. Warner, 88 Texas, 648.

**4.—Negligence—Railway—Maintenance of Way.**

Where a railroad bridge gave way causing a train passing over it to be precipitated below, and the danger arose from undermining the piers by digging going on at the time by workmen under the supervision of the railway company's division engineer for new piers, the workmen and engineer, in the absence of evidence to show their relation to an independent contractor, were, as to a servant operating the train, the alter ego of the railway company, and evidence that they knew of the danger or could have known it by exercise of ordinary care authorized the court to submit the issue of negligence on the theory that the company knew or by the exercise of ordinary care would have known of the danger in time to avert the accident and injury to the servant on the train.

**5.—Same—Charge.**

A charge which told the jury that the railway company was under the duty toward its conductor to exercise ordinary care to see that the bridges over which he is required to run the train in his charge are in a reasonably safe condition for that purpose, and then, in order for a recovery against it, required them to find that the company knew that the bridge in question was not reasonably safe, or by the exercise of ordinary diligence in the way of inspection would have known of it in time to have informed the conductor and averted injury to him, did not impose the duty of inspection; and the qualification, "in the way of inspection," was favorable to the company.

**6.—Same.**

It seems that a charge instructing that it is the duty of a railway company to a conductor of its train to use ordinary care in the way of inspection to provide him a reasonably safe place for his work, would not be improper.

**7.—Charge—Undue Prominence—Repetition.**

Where one paragraph of the charge is a declaration of the law as applicable to the case, another the submission to the jury of the facts for recovery by the plaintiff applicable to that declaration, and a third is the negative hypothesis of those facts in favor of defendant, there is no undue prominence or repetition.

**8.—Negligence—Railway—Maintenance of Way.**

Where plaintiff, a conductor in the employment of the defendant railway company on a work train, was proceeding slowly in the course of his duty over the river when the bridge broke in two on account of being undermined by the work of digging that was at the time in progress, presumably by defendant's employes, and no warning was given him as he approached, and the breaking of the bridge precipitated him and the cars below, inflicting the injuries complained of, and defendant neither disputed the facts nor offered excuse or explanation, it was so certain the jury would impute negligence that it was not possible to predicate prejudice on any error in respect to such issue.

**9.—Damages—Personal Injuries—Charge.**

A charge instructing the jury in case they found for plaintiff to assess his damages at such a sum as they should "believe from the evidence will fairly and adequately compensate him for the alleged injuries sustained on the occasion

in question, if any," confined the assessment to injuries received by plaintiff at the time of the casualty and alleged in the petition. It was correct as far as it went, and defendant could not complain in the absence of a request for a special charge.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Andrews, Ball & Streetman,* for appellant.

*Ewing & Ring,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—This was an action by appellee, G. P. Olmstead, against the appellant Beaumont, Sour Lake & Western Railroad Company, to recover damages for personal injuries sustained by him while he was engaged in the service of appellant as conductor on a work train, by breaking in two of its bridge across San Jacinto river over which the train was running, so that he and the cars were precipitated below and he caused to sustain serious and permanent injuries; the gravamen of the complaint being that appellant had failed to use ordinary care for his safety, in that the bridge had been made dangerous and not reasonably safe by one or more of its supports having been undermined and rendered insecure, of which the defendant knew, or by the exercise of ordinary care on its part would have known, in time to have warned plaintiff and averted injury to him, but that it had negligently failed to do so, and had negligently permitted the bridge to be and remain in such unsafe condition and the train to pass over it in that condition, thereby proximately causing the injuries complained of. The answer of appellant, so far as relied on, consisted of a general denial, with pleas of assumed risk and contributory negligence. A jury trial resulted in a verdict and judgment in favor of appellee for $20,000, to review which the railroad company has appealed.

The evidence adduced warrants the following findings of fact: On July 15, 1907, appellee was in the employment of the appellant in the capacity of conductor on one of its freight trains, engaged in hauling sand for surfacing. The train upon which he was working was not a construction but a surfacing train. The sand was hauled from a pit into which a spur track ran about 1,500 feet east of the San Jacinto river, where a steam shovel was used for loading cars. When the cars were loaded with sand the engine, which was headed east, would push them westward over the bridge, cross the San Jacinto river and swap them for empty cars, returning with the empties, and the loaded cars would be taken by another engine to the point on the track where the sand was needed, and then in due course would be similarly returned as empties. This was the method of the work. Appellee did not always, but did occasionally, go on these trips with the train; he had not gone over the bridge for four or five days prior to the casualty. On the afternoon of July 15, 1907, at about 3 o'clock, the engine at the pit swapped loaded for empty cars, and by shortly after 5 o'clock a train of eleven loaded cars was ready to be swapped for empties, but the engine with the empties not being in sight, and it being

necessary before 6 o'clock to fill the engine tank with water for use by the steam shovel during the night, appellee caused the engineer to back the train to the water tank alongside the bridge about 800 feet westward from the east margin of the San Jacinto river. The trestle of the bridge was about 3,000 feet long. The bridge was about 45 or 55 feet high, and the track for two miles was straight. Just about the time the engine reached the water tank appellee, who was on the most westward car, the one farthest from the engine, heard a noise of the giving away of the bridge, and in the moment that elapsed before the bridge gave way he decided that it would be safer for him to remain on the car than to attempt to leave it from the height he was. The bridge broke in two and part of it went down, leaving a gap in it sufficiently wide, being from 50 to 200 feet wide, to precipitate below the five westward or rear cars, including the one upon which appellee was. Appellee was thrown below, striking the ground or other hard object, thereby sustaining the injuries of which he complains, which will be further referred to in discussing the assignment of error which challenges the verdict as excessive. The breaking in two and giving away of the bridge was caused by a gang of men who were engaged at appellant's work in excavating below for new creosote piers, digging so as to undermine the old piers without properly supporting them, whereby the cap was caused to work off the stringers of the bridge and it to fall when the train came upon it. The bridge was in part to be replaced by the new creosote piers, but it had been in use for about two years, and the road was about to be opened up with it to passenger traffic. Similar trains, heavily loaded with sand in the customary manner, as that in question, had been passing over the bridge every four or five hours during the day. Such a one had passed thereover about an hour and a half before the bridge gave way. One Forbes was appellant's general superintendent, and one Innis ranked under him as its agent, and one Kountz was the appellant's division engineer, and Kountz was under or near the bridge at the time of the casualty. He was in charge of the bridges and surfacing. No notice or warning was given appellee by the persons doing the work of excavating or by any one else of any impending danger, and there is practically no evidence that appellee had knowledge of the defect and danger. He knew the excavation was going on as it had been for the two weeks next passed, and he had seen a great many similar excavations. He testified: "There was nothing about that excavation and the way those piles were put in the holes, and so on, before this accident happened, that attracted my attention to any danger; never examined it very closely; my business was fifty-five feet above it; . . . had never had any experience in making brick buildings and excavations like that; it is not in my line." There was no evidence that plaintiff did or omitted to do anything in which he was negligent. Appellant offered no evidence on the issue of its liability, confining its testimony to the amount of damages.

Appellant, by its first and second assignments of error, complains that the verdict is excessive in that the amount awarded appellee would compensate him for an entire loss of his earning capacity for the remainder of his life if he had been perfectly sound prior to his inju-

ries, whereas the evidence shows that prior to his injuries appellee was not a sound and healthy man, but had certain defects and disabilities which rendered him unable to perform train service and unfit to endure strong physical exertion, and that prior to the casualty he had organic trouble with his heart which disqualified him for train service, and that he had tuberculosis in his family, and that appellee is not wholly disabled from performing work of any kind, but only from performing such ordinary manual labor as an able-bodied man could.

Briefly, the facts relative to appellee's injuries are these: At the time appellee was injured he was thirty-nine years of age, and, though of slight build, was in perfectly good health—had not paid $20 for physician's services in his life; had experienced no trouble whatever with his lungs and heart; had been railroading, serving as brakeman and conductor, with slight intervals, continuously for twenty years before the trial; the average salary of a conductor is from $125 to $150 per month; he was earning $100 per month in that capacity when injured; he was temperate and of good habits of life, usually employed, and could average with the best in that regard. When he was thrown to the ground from the bridge he was rendered unconscious, came to for a few moments as he lay on the bank of the river, then lapsed into unconsciousness, remaining in that condition until he awoke about four o'clock the next morning in the hospital. He was badly bruised on the head, arms and body, one arm remaining useless for weeks. The injuries, which were shown to be both serious and permanent, consisted of the following: "(1) Five broken ribs, which were protruding at the time, one of which, near the heart, appears to have never united to the frontal bone. The result is practically a floating rib and pressure on the heart and lung. (2) The bending or breaking of the coccyx, where he received a severe blow. The coccyx supports the pelvis and rectum and cut-off muscles. (3) Compression of the chest, so interfering with his lungs as to make it difficult for him to inhale enough air to sustain him in the effort to make any vigorous exertion. The testimony shows that these injuries are permanent and would incapacitate appellee from railroad service he had been accustomed to, or from doing any hard work or any work that required sustained exertion or continued exercise; and that he was thereby rendered susceptible to tuberculosis and other diseases, and that he could not live with any comfort at all only in a dry atmosphere not of great altitude. When hurt appellee weighed about 137 pounds, and at the trial weighed 117 pounds, and had been reduced during his sufferings to about 102 pounds. His suffering had been great, was continued at the trial and was of a nature to continue in the future; for three weeks he lay in the hospital, unable during most of the time to move from his position in bed for any purpose, on account of the injury to the coccyx; he could not raise his hand for a long time; the pain from the injured coccyx extended through the spinal column; the broken ribs were bandaged so that the bandages extended around his body, over the spine and heart, and his heart gave him trouble; since then he has had trouble with his heart and lungs on account of the compression of his chest, rendering him unable to sleep well at night, or to supply his lungs with the necessary amount of air for comfortable breathing, so

that when he exercises at all his lungs give out. The broken or bent coccyx renders him unable to sit on anything hard any length of time, so that he usually uses a pillow for a seat, and in case of any sudden jolt his suffering almost reaches the point of fainting; the pressure on his lungs is so great that his breathing is accomplished by means of the abdominal muscles; he lost his entire time down to the trial, having been unable to do any work, has difficulty in concentrating his mind; when he sits up a half hour his shoulders get heavy and his back gives him pain up to the neck; his lungs pain him continually every breath he takes. When appellee applied to appellant for employment he was examined by appellant's local physician at Beaumont, Dr. Reed, who refused to recommend him for the service for the reason, as shown by his report and his testimony, that he found his pulse at 92, and a "mitral regurgitant murmur" of his heart. A few days later he was examined by another local surgeon of appellant, Dr. Reagan, who recommended appellee for service, and upon which recommendation he was employed. Dr. Reagan noted appellee's pulse at 88 and his heart as "rapid," but declared appellee to be "physically average;" that his reason for passing him was because the railroad company was in urgent need of employes. Dr. Howard, appellant's local surgeon at Houston who attended appellee soon after he was hurt, testified that at first he did not find, but on a subsequent examination he did find, a murmur of the heart. Dr. Eckhardt testified that appellee had no indication of having organic heart disease, and Dr. Bourland testified that he had examined appellee carefully and found nothing wrong with his heart. As to the claim that there was tuberculosis in appellee's family, the only testimony on the subject was that appellee's sister rode about two miles on a beach in a bathing suit, from which she contracted pneumonia and died in six months from what is called "galloping consumption." That was the only consumption ever in his family.

In view of the facts above set out we can not say that the amount of the verdict, though large, was not justified. The power of an appellate tribunal to reverse a verdict is not arbitrary, and where there is, as in this case, nothing in the amount of the verdict or the record to indicate that the jury was actuated by passion or prejudice or other improper motive, its finding as to the amount of the award must be taken as conclusive. (Galveston, H. & S. A. Ry. v. Hynes, 21 Texas Civ. App., 34; Galveston, H. & S. A. Ry. v. Stevens, 94 S. W., 397; International & G. N. Ry. v. Brazzil, 78 Texas, 314; Missouri, K. & T. Ry. v. Nesbitt, 43 Texas Civ. App., 630.) The assignments are overruled.

Appellant's third, fourth and fifth assignments of error complain of the first, sixth and seventh paragraphs of the court's charge, in which it is required as an essential to appellee's recovery not only that the bridge must have been not reasonably safe and appellant negligent in failing to warn and avert injury to appellee therefrom, but also that appellant knew, or by the exercise of ordinary care in the way of inspection would have known, of the unsafeness in time to have averted injury by such warning. The complaint is in effect, (1) that

the evidence did not raise the issue of such knowledge in either phase; (2) that inspection was erroneously imposed on appellant as a legal duty; (3) that there was such undue repetition in the charge on the issue of knowledge as was calculated to prejudice appellant.

The paragraphs of the charge complained of are as follows:

"1.  A railroad company is not an insurer of the safety of its track or bridges, nor is it required to see that such are absolutely safe, but it is under duty towards its employees, such as one serving as a conductor, to exercise ordinary care to see that the bridges over which he is required to run the train in his charge are in a reasonably safe condition for the purpose, and if it knows, or by the exercise of ordinary care in the way of inspection would have known, that a bridge on or over which such train is required to be run is in a condition not reasonably safe for the purpose, but nevertheless fails through negligence to inform such employe thereof so as to avert injury therefrom, then if such negligence is a proximate cause of injuries to such employe it will be liable therefor, unless the employe by his own negligence has contributed to the injuries or unless he has assumed, as explained below, the risk or danger thereof."

"6.  If you believe from the evidence that plaintiff was injured substantially in the manner alleged, and that he was at the time in the employment of defendant and in the ordinary discharge of the duties of his service for it as conductor of the train in question, and that the bridge over San Jacinto river on which such train was moved was in a condition not reasonably safe for the running of the train on or over it, and that defendant knew this or by the exercise of ordinary care or diligence in the way of inspection would have known of it in time to have informed plaintiff and averted injury to him, and that it failed to do so, and that such failure was a want of ordinary care, and that such want of ordinary care was .a proximate cause, as before defined, of plaintiff's alleged injuries if sustained, then let the verdict be for the plaintiff, unless you find for defendant on other issue or issues submitted by the court.

"7.  The burden is upon the plaintiff to prove the facts necessary to make out a case for recovery, as submitted in the court's charge, by a preponderance of the evidence; therefore, unless it is shown you by a preponderance of the evidence that the defendant knew the bridge was in a condition that was not reasonably safe for the running of the train thereon, if it was, or would have known of it by the exercise of ordinary care in the way of inspection in time to have informed plaintiff and averted injury to him, and further, that it failed to do so, and that such failure was a want of ordinary care, and further, that such want of ordinary care was a proximate cause of plaintiff's alleged injuries, that is, a cause without which they would not have happened and from which injury to plaintiff or some like injury might reasonably have been anticipated as a natural and probable consequence, then let the verdict be for the defendant."

The charge submitted to the jury as to whether the appellant knew or by ordinary care in the way of inspection would have known of the dangerous condition of the bridge in time to have averted injury to appellee by warning.  The evidence was plainly such as to warrant a

reasonable inference by the jury that appellant's agents and servants knew of the danger and that it was also knowable to them by the exercise of ordinary care. The danger came to the bridge from under-mining by digging going on at the time by appellant's servants under the supervision of its agent, the division engineer. The workmen, as well as the division engineer, were, as to appellee, the *alter ego* of appellant. (Revised Statutes, art. 4560f.) The workmen under-mining the bridge were there doing appellant's work, and no evidence was adduced that they occupied a relation to an independent contractor that would exempt appellant from responsibility for the consequence of their negligence. In Taylor B. & H. Railway v. Warner, 88 Texas, 648, our Supreme Court, speaking through Justice Brown, says: "Every person who is found performing the work of another is presumed to be in the employ of the person whose work is being done, and if the facts be such as to exempt the owner of the property improved, or the person for whom the work is being performed, from liability for the acts of those performing such work, it devolves upon him who claims such exemption to make proof of the terms of the contract, showing that the relation of master and servant did not exist. Burton v. Galveston, H. & S. A. Ry.. 61 Texas, 533; 14 Am. & Eng. Ency. of Law, 751; Perry v. Ford, 17 Mo. App., 212."

We think that under the facts of this case it was a reasonable inference open to the jury that the defendant, by its employes and agent there doing and supervising the work that made the danger, knew of the danger they created, and this being true, such danger was necessarily knowable to them by the exercise of ordinary care.

The contention that the charge was wrong in imposing upon appellant the duty of inspection, is without merit. No such duty was imposed, the defendant being declared only "under the duty toward its employes, such as one serving it as a conductor, to exercise ordinary care to see that the bridges over which he is required to run the train in his charge, are in a reasonably safe condition for that purpose." After thus stating the duty, the trial court, in order for recovery by plaintiff, repuired the jury to additionally find "that defendant knew this (that the bridge was not reasonably safe) or by the exercise of ordinary diligence in the way of inspection would have known of it in time to have informed the plaintiff and averted injury to him, and that defendant failed to do so, and that such failure was a want of ordinary care, and that such want of ordinary care was the proximate cause of plaintiff's alleged injuries. It was sufficient if appellant knew or by the exercise of ordinary care could have known of the unsafeness of the bridge, and the words "in way of inspection" were a qualification against appellee and in favor of appellant, for under the charge the appellee could only recover if the appellant knew or by the exercise of ordinary care exercised in a particular way, to wit, by inspection, could have known of the danger, although such knowledge might have been imputable to it in some other way. Knowledge to the master, actual or implied, is all that is necessary, whether he acquired it from inspection or otherwise. It follows that the charge, if subject to the criticism at all as applied to the facts, was

more favorable to appellant than it had the right to demand; hence, that it is not open to its complaint.

But even had the charge told the jury that it was the duty of appellant to use ordinary care in the way of inspection to provide appellee a reasonably safe place for his work, we are not prepared to say that the charge was incorrect. It seems that such has been declared to be the law by our Supreme Court in the following cases: St. Louis S. F. Ry. v. George, 85 Texas, 150; Texas & Pac. Ry. v. O'Fiel, 78 Texas, 486; Galveston, H. & S. A. Ry. v. Templeton, 87 Texas, 42; Missouri Pac. Ry. v. McElyea, 71 Texas, 386.

The adversely cited cases of Galveston, H. & S. A. Ry. v. English, 59 S. W., 626; Houston & T. C. Ry. v. Stewart, 92 Texas, 540; Dillingham v. Parker, 80 Texas, 572; Gulf, C. & S. F. Ry. v. Greenlee, 70 Texas, 553; Missouri, K. & T. Ry. v. Rogers, 91 Texas, 52; and Texas & Pac. Ry. v. Murphy, 46 Texas, 356, are easily distinguished by the consideration that in each of these cases the trial court undertook to declare some act as a duty when neither the common law nor a statute had imposed such a duty. Here the common law does impose as a legal duty the use of ordinary care to inspect one's premises to see that they are reasonably safe; hence it would not have been improper for the trial court to have declared such to be a duty, although, as we before stated, it did not do so.

The objection to the charge as giving undue prominence or containing undue repetition as to any issue submitted can not be sustained. The first paragraph was a declaration of the law as applicable to the case. The sixth was a submission to the jury of the facts for recovery by appellee applicable to that declaration, and the seventh was the negative hypothesis of those facts in favor of the defendant. In so charging there was no undue prominence or repetition. (Ratto v. Bluestein, 84 Texas, 59; International & G. N. Ry. v. Leak, 64 Texas, 657; Brady v. Georgia Home Ins. Co., 24 Texas Civ. App., 466.)

But granting that the charge on the issue of negligence was erroneous, we are of the opinion that appellant was not prejudiced thereby as appellee made out a *prima facie* case for liability that was in no wise rebutted. Appellee, a conductor in the employment of appellant on a dirt train, was proceeding slowly in the course of his duty over the river when the bridge broke in two on account of being undermined by the work of digging that was at that time in progress, presumably by appellant's employes. No warning of the impending danger was given him as he approached. The breaking of the bridge precipitated appellee and the cars below, inflicting the injuries upon him of which he complained. To the evidence from appellee of these facts the appellant has remained silent, neither disputing them nor offering excuse or explanation. It is so certain, in such a state of case, a jury would impute negligence that it is not possible to predicate prejudice on any error in respect to it. We believe the following authorities sustain the correctness of this view. Galveston, H. & S. A. Ry. v. Delahunty, 53 Texas, 206; Thompson v. Galveston, H. & S. A. Ry., 106 S. W., 910; Galveston, H. & S. A. Ry. v. Harris, 107 S. W.,

110; McCray v. Galveston, H. & S. A. Ry., 89 Texas, 171.   The assignments are overruled.

Appellant's sixth assignment of error challenges the ninth paragraph of the court's charge relative to the assessment of damages, claiming that the charge was error because there was some evidence that plaintiff had contracted tuberculosis from the injuries but there was no allegation of such, and that hence the jury might have included in their assessment compensation for a non-alleged item.   The paragraph of the charge complained of is as follows: "If you find for plaintiff, assess his damages at such sum as you believe from the evidence will fairly and adequately compensate him for the alleged injuries sustained on the occasion in question, if any; taking into consideration as elements of damage, so far as shown by the evidence to be the natural and proximate result of such injuries, (1) mental anguish and physical suffering, including such as he will in reasonable probability suffer in the future, if any; and (2) the reasonable value of his lost time down to the trial, if any; and (3) the reasonable value of expenditures made or liability incurred by him for necessary medicine and medical attention, if any, in attempting a cure; and (4) the reasonable value, if paid now, of his lost earning power in the future beyond the trial, if any."

It will be seen that the court instructed the jury, in case they found for plaintiff, to assess his damages at such a sum as they should "believe, from the evidence will fairly and adequately compensate him for the *alleged* injuries *sustained on the occasion in question,* if any." Thus, by the very terms of the charge the court confined the assessment to injuries received by appellee at the time of the casualty and alleged in the petition.   The charge was good as far as it went, and if not as full and specific as desired, appellant should have requested a special charge curing the defect, failing in which appellant can not complain here of the charge as given.   Gulf, W. T. & P. Ry. v. Staton, 49 S. W., 277; Ry. v. Long, 48 S. W., 599; Ry. v. Bingle, 16 Texas Civ. App., 653; San Antonio & A. R. Ry. v. Safford, 48 S. W., 1105; Schwartzman v. Cabell, 49 S. W., 113; O'Brien v. Seale, 41 S. W., 150; Texas & Pac. Ry. v. Gay, 86 Texas, 609; Gallagher v. Bowie, 66 Texas, 265.   The assignment can not be sustained.

There being no reversible error presented, the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.