Reid STANFORD et al.

v.

McLEAN TRUCKING CO. et al.

Civ. A. No. M–79–110–CA.

United States District Court,
E. D. Texas,
Marshall Division.

Jan. 23, 1981.

Doyle Curry of Jones, Jones & Baldwin, Marshall, Tex., for plaintiffs and intervenors.

Norman Russell of Atchley, Russell, Waldroup & Hlavinka, Texarkana, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

ROBERT M. PARKER, District Judge.

This is an action for damages under the Texas Wrongful Death Act, the Texas Sur-

vival Statute, and the Texas common law of negligence, brought in the Eastern District of Texas, Marshall Division, pursuant to 28 U.S.C. 1332.

On July 17, 1978, in Mexia, Texas, a car driven by Connie Crook, with passengers Rebecca Stanford and Holly Crook, was struck from the rear by a loaded tanker truck owned and operated by Defendants McLean Trucking Company and Herrin Petroleum Transport Equipment Corporation. The car was pushed a substantial distance down the highway and into a used car lot, crushing the car against the vehicles in the car lot and under the loaded tanker truck. As a result of this accident, all persons within the car were killed and property damage resulted to several vehicles in the car lot.

Plaintiff Reid Stanford contends he is entitled to damages for the wrongful death of his wife, Rebecca Stanford. He further claims that, as beneficiary of her estate, he is entitled to damages for the conscious pain, suffering and mental anguish suffered by her from the time of the impact until the time of her death; Plaintiff Lee Roy Crook contends he is entitled, individually and as next friend of the deceased's surviving daughter Kelly Crook, to damages for the wrongful death of his wife Connie Crook. He further claims that, as beneficiary of her estate and as next friend of Kelly Crook, he is entitled to damages for the conscious pain, suffering and mental anguish suffered by her from the time of the impact until the time of her death; Intervenors Dennis Fowler and James West contend they are entitled to recover under the Texas common law of negligence for damage to various vehicles.

Defendants McLean Trucking Company and Herrin Petroleum Transport Equipment Corporation stipulated jurisdiction, venue and liability. In consideration for such stipulation, Plaintiffs renounced any claim for punitive damages arising by reason of alleged conduct claimed to constitute gross negligence. All parties agreed to withdraw the case from the jury docket and try the case before the Court.

There remain only two questions for the Court to decide: (1) whether the deaths of Connie Crook, Holly Crook and Rebecca Stanford were instantaneous, or if such deaths occurred significantly later than the moment of impact, thus, giving rise to a cause of action for the conscious pain, suffering and mental anguish of the deceased; and (2) the amount of damages to be awarded to each of the Plaintiffs and Intervenors.

There are three distinct causes of action involved in this case. The first is a cause of action arising under the Texas common law of negligence. The second is a cause of action arising under the Texas Wrongful Death Act. *Tex.Rev.Civ.Stat.Ann.* art. 4671–78 (Vernon's 1952 & supp. 1979). The third is a cause of action arising under the Texas Survival Statute. *Tex.Rev.Civ.Stat. Ann.* art. 5525 (Vernon's 1952).

██ The action brought by Intervenors Dennis Fowler and James West arises under the Texas common law of negligence. Such Intervenors seek recovery for damage to five vehicles in their car lot due to the accident. Evidence of such damage was not significantly controverted by the Defendants. The Court finds that such Intervenors sustained property damage in the amount of $15,775.00 as a result of the negligence of the Defendants.

## RECOVERY UNDER THE WRONGFUL DEATH & SURVIVAL STATUTES

██ Under the Texas Wrongful Death Act, beneficiaries, which include the surviving husband, wife, children and parents of the deceased, may recover damages proportionate to the injury resulting from the death. *Tex.Rev.Civ.Stat.Ann.* art. 4675 § 4677 (Vernon's 1952). Damages in a wrongful death action are not limited to money, but include things that can be valued in money. *Gill v. United States*, 285 F.Supp. 253 (E.D.Tex.1968), affirmed in part, reversed in part on other grounds, 429 F.2d 1072 (5th Cir. 1970), appeal after remand, 449 F.2d 765 (5th Cir. 1971). Such damages are assessed according to the present value of anticipated benefits. *Mil-*

ler v. Alexandria Truck Lines, Inc., 273 F.2d 897 (5th Cir. 1960), opinion corrected, reh. denied, 274 F.2d 942 (5th Cir. 1960).

Generally, under the Texas Survival Statute and the Texas Wrongful Death Act, beneficiaries are allowed to recover for the pain and suffering of the deceased, medical expenses, funeral expenses, and property damage resulting from the collision. *Mosier v. American Motors Corporation*, 303 F.Supp. 44 (S.D.Tex.1967), affirmed, 414 F.2d 34 (5th Cir. 1967). Beneficiaries under the statute may also recover for pecuniary benefits which they might reasonably have expected to receive had the wrongful death not occurred. *Simpson v. United States*, 322 F.2d 688 (5th Cir. 1963).

The evolution of the role of a woman as an economic contributor or producer of income in our society is quite evident by the facts of this case. It is also evident that such evolution has not always eroded other traditional role functions and did not in this case. Household services, counsel, guidance and nurture performed in these families were not diminished.

The Court's view of the impact in our modern society of the loss of a wife and mother must, in order to do justice, encompass an appreciation for this dual role to fairly and reasonably compensate her beneficiaries.

### PAIN AND SUFFERING OF THE DECEASED

Under Texas law, the only pain and suffering for which there can be recovery on behalf of the deceased is that which the deceased consciously experienced. Events that occurred subsequent to unconsciousness cannot prolong nor increase suffering and are not compensable. *Sharpe v. Munoz*, 256 S.W.2d 890 (Tex.Civ.App.—San Antonio 1953, writ ref. n. r. e.); *Burrous v. Knotts*, 482 S.W.2d 358 (Tex.Civ.App.—Tyler 1972, no writ). There is no award for pain and suffering where the deceased was immediately rendered unconscious as a result of the injuries. *Mpiliris v. Hellenic Lines, Ltd.*, 323 F.Supp. 865 (S.D.Tex.1969), affirmed, 440 F.2d 1163 (5th Cir. 1971). Furthermore, where the immediacy of the occurrence and the absence of other evidence renders too speculative a finding that the decedent consciously suffered pain, an award for pain and suffering is improper. *In re Dearborn Marine Service, Inc.*, 499 F.2d 263 (5th Cir. 1974), cert. denied, 423 U.S. 886 (1975).

In the instant case a bystander heard a scream emanating from inside the car which was being carried on the front of the Defendant's truck after impact as it was pushed passed him. It was impossible to recognize the voice or to attribute it to a particular occupant of the vehicle. While such evidence certainly supports conscious suffering, it introduces such speculation that, in the Court's opinion, there is insufficient evidence to support Plaintiffs' claim of damages for conscious pain, suffering and mental anguish of the deceased. Evidence of the force of the impact is such that it is more likely than not that the deceased experienced immediate or nearly immediate loss of consciousness. Therefore, Plaintiffs' claim for damages for the conscious pain, suffering and mental anguish of the deceased is denied.

### MEDICAL AND FUNERAL EXPENSES

Since Rebecca Stanford, Connie Crook and Holly Crook were killed in the accident, no medical expenses were incurred.

Funeral expenses, which were not controverted, equaled $2,490.00 for the burial of Connie and Holly Crook and $2,468.00 for the burial of Rebecca Stanford.

### LOSS OF PECUNIARY BENEFITS

In determining the loss of future earnings, several factors can be considered, including the decedents' future plans, work-life expectancy, annual earnings before death, health, diligence, aptitudes, work habits in general, and the prospects for advancement. See *In re Sincere Navigation Corp.*, 329 F.Supp. 652 (E.D.La. 1971), affirmed in part, vacated in part on other grounds, 529 F.2d 744 (5th Cir. 1976). Though the earning capacity of the decedent is not the sole basis for damages in a

wrongful death action, an estimate of the decedent's future earnings based on the decedent's past earnings is a primary element of such an award. *Dover Corp. v. Perez*, 587 S.W.2d 761 (Tex.Civ.App.—Corpus Christi 1979, writ ref. n. r. e.); *Simpson v. United States, supra.*

According to estimates presented by the Plaintiffs' economist, decedent Connie Crook would have earned an amount equal to $11,011.00 during the period from the date of death to the date of trial and an amount equal to $243,657.00 subsequent to the date of trial. Such estimates further reveal that decedent Rebecca Stanford would have earned an amount equal to $11,796.00 during the period from the date of death to the date of trial and an amount equal to $274,485.00 subsequent to the date of trial.

■ The term "pecuniary benefits" is quite broad and it encompasses many elements. In measuring the amount of damages for loss of pecuniary benefits, the courts consider not only loss of financial benefits, but also loss of elements that can be valued in money, including the reasonable pecuniary value of counsel, protection, advice, services, care and attention. *Camco Inc. v. Evans*, 377 S.W.2d 703, 708 (Tex.Civ.App.—San Antonio 1963, writ ref. n. r. e.); *Rideaux v. Lykes Bros. S. S. Co.*, 285 F.Supp. 153 (S.D.Tex.1968).

■ In addition to compensation for the loss of the decedent spouse's counsel and guidance, the surviving spouse is entitled to the value of the decedent spouse's services in the home. *Simpson v. United States, supra.* Estimates presented by the Plaintiffs' economist show, assuming the decedent spouses had remained employed outside the home, the sum of $12,899.00 would equal the value of household services rendered by the decedent Connie Crook from the date of death to the date of trial and the sum of $531,175.00 would equal the value of such services subsequent to trial. Plaintiffs' economist's estimates further show that the sum of $9,316.00 would equal the value of household services rendered by decedent Rebecca Stanford from the date of death to the date of trial and the sum of

$493,386.00 would equal the value of such services subsequent to trial.

■ Children are not limited to recovering only such pecuniary benefits from the death of their mother as would have resulted from her mental and bodily labor. *San Antonio & A. P. Ry. Co. v. Long*, 48 S.W. 599 (Tex.Civ.App.—San Antonio 1898, writ ref.); See also *San Antonio A. P. Ry. Co. v. Long*, 27 S.W. 113 (Tex.1894); *Penguin Industries v. Junge*, 589 S.W.2d 848 (Tex.Civ. App.—Waco 1979, writ ref. n. r. e.). In fact, the courts of Texas have recognized that, in addition to a parent's financial support and personal services, a child suffers a unique intangible loss as a result of the wrongful death of a parent. This intangible loss has been most often labeled as the "nurture" element. *International & G. N. Ry. Co. v. McVey*, 87 S.W. 328 (Tex.1905); *Gill v. United States, supra; Miller v. Alexandria Truck Lines, Inc., supra; Murray v. Templeton*, 576 S.W.2d 138 (Tex.Civ.App.— Texarkana 1978, no writ); *Lee v. Andrews*, 545 S.W.2d 238 (Tex.Civ.App.—Amarillo 1976, writ granted, appeal dismissed); *Page v. Scaramozi*, 288 S.W.2d 909 (Tex.Civ.App. —San Antonio 1956, writ ref. n. r. e.); *Hemsell v. Summers*, 138 S.W.2d 865 (Tex. Civ.App.—Amarillo 1940, no writ); *Lancaster & Wright v. Allen*, 207 S.W. 984 (Tex. Civ.App.—Texarkana 1918), reversed on other grounds, 217 S.W. 1032 (Tex.1920); *Marshall v. E. T. Ry. Co. v. Riden*, 194 S.W. 1163 (Tex.Civ.App.—Texarkana 1917, writ ref.). Texas courts have combined the "nurture" element with other elements such as services, advice, counsel, care, support, education, moral and mental training, and admonition. *Lee v. Andrews, supra; Miller v. Alexandria Truck Lines, Inc., supra; Murray v. Templeton, supra; Lancaster & Wright v. Allen, supra.* Occasionally, the courts of Texas have listed one or more of the above elements without the inclusion of the "nurture" element. *J. A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728 (Tex.Civ. App.—Amarillo 1967, writ ref. n. r. e.); *Huntington v. Walker's Austex Chili Co.*, 285 S.W.2d 255 (Tex.Civ.App.—Waco 1955, writ ref.); *Texas & P. Ry. Co. v. Riley*, 183 S.W.2d 991 (Tex.Civ.App.—Texarkana 1944,

writ ref.), cert. denied, 325 U.S. 873, 65 S.Ct. 1414, 89 L.Ed. 1991 (1945); *St. Louis Southwestern Ry. Co. of Texas v. Anderson*, 206 S.W. 696 (Tex.Civ.App.—Dallas 1918, writ ref.); *Beaumont Traction Co. v. Dilworth*, 94 S.W. 352 (Tex.Civ.App.—Beaumont 1906, no writ).

▇▇▇▇ Generally, the courts have defined the "nurture" element on a case by case basis. The facts and circumstances of each particular case control, not only the legal basis for such damages, but their quantum as well. *Solomon v. Warren*, 540 F.2d 777 (5th Cir. 1976), cert. denied, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977). The courts consider many factors, including the amount of attention and time previously given by the parent to the child. *Moore-McCormack Lines, Inc. v. Richardson*, 295 F.2d 583 (2d Cir. 1961), cert. denied, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962), cert. denied, 370 U.S. 937, 82 S.Ct. 1577, 8 L.Ed.2d 806 (1962), reh. denied, 370 U.S. 965, 82 S.Ct. 1580, 8 L.Ed.2d 835 (1962).

▇▇▇ The "nurture" element is considered separate and distinct from the element of "society and companionship". *Solomon v. Warren, supra*. Unlike damages for the "nurture" element, damages for loss of "society and companionship" and damages for loss of "affection" historically have not been recoverable under the Texas Wrongful Death Act. *Tex.-Jersey Oil Corp. v. Beck*, 305 S.W.2d 162 (Tex.1957); *Fry v. Lamb Rental Tools, Inc.*, 275 F.Supp. 283 (W.D.La.1967).

In the instant case, evidence abounds of an extremely close mother-child relationship between the decedent Connie Crook and her surviving minor child, Kelly Crook. Kelly Crook depended upon her mother for nurture, education, care, advice, counseling and religious, moral and intellectual training. The relationship, of course, would have continued had the mother survived.

Kelly Crook has been deprived of the value that must be assigned to the nurture, counsel and training of a very conscientious, strong, hard working, and supportive mother for all her formative years. The Court's task is not an easy one.

Recovery for a spouse under the Texas Wrongful Death Act has been distinguished from recovery by a child in several ways. Some courts have allowed recovery by the spouse for counsel, protection, and services while allowing recovery by the child for care, moral advice, education and training. *Duncan v. Smith*, 376 S.W.2d 877 (Tex.Civ.App.—Eastland, 1964), reversed on other grounds, 393 S.W.2d 798 (Tex.1965). Other courts have allowed recovery by the spouse for counsel, services, advice and support while allowing recovery by the child for care, advice, education and nurture. *Page v. Scaramozi, supra*. Still other courts have allowed recovery by the spouse for counsel, care and attention while allowing recovery by the child for intellectual and moral advice, education and training. *St. Louis Southwestern Ry. Co. of Texas v. Anderson, supra*.

The evidence that Reid Stanford and Lee Roy Crook looked to their respective wives for counsel, personal services, advice, care, attention and support is clear and pursuasive. The Court cannot escape the conclusion that much, if not most, of the stability and strength of the Stanford marriage was provided by Rebecca Stanford.

## LOSS OF SOCIETY AND COMPANIONSHIP OR CONSORTIUM

The lamppost illuminating the paths of the federal courts traveling an *Erie* road have historically been far from consistent or reliable. Many times these journeys have been accompanied, by necessity, with all too much groping for illumination. It now appears that the Texas Supreme Court has started the process of removing the impediment to recovery for certain elements of damage. The language contained in the concurring opinion of Judge Spears in *Bedgood v. Madalin*, 600 S.W.2d 773, 777 (Tex.1980), sounds the call for the courts to base their construction of the Texas Wrongful Death Act on modern economic realities and to set aside the unrealistic and antiquated, restrictive interpretation of the Act as being one providing compensation for only pecuniary losses.

■ This court can hardly conceive of an element of damage to a child or husband more real than the deprivation of the rewards that flow from the family relationship: love, comfort, assistance and companionship. Therefore, the Court holds that, if and when the question is presented to the Supreme Court of Texas, it will agree that the Texas Wrongful Death Act does not preclude recovery for elements of damage embraced by the concept of loss of society and companionship. The fact that *Bedgood v. Madalin, Id.*, concerned the death of a child offers no solace for the proponents of restricting damages to economic or pecuniary losses.

■ The Court, being of the opinion that the evolution of Texas law to permit recovery for loss of society and companionship is long overdue, finds under the principles of *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that Plaintiff Kelly Crook has sustained damages for loss of society in the amount of $100,000, Plaintiff Lee Roy Crook in the amount of $100,000 and Plaintiff Reid Stanford in the amount of $75,000.

■ These awards to Plaintiffs Lee Roy Crook and Reid Stanford embrace the additional elements contained the general concept of loss of consortium. The term "consortium" is defined by Black's Dictionary as "conjugal fellowship of husband and wife, and the right of each to the company, cooperation, affection and aid of the other in every conjugal relation." *Black's Law Dictionary* 382 (4th ed. 1968). "Consortium" has been most recently defined by the Texas Supreme Court as including "the mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage." *Whittlesey v. Miller*, 572 S.W.2d 665, 666 (Tex. 1978). Under modern law, the emphasis is on the sentimental and emotional elements of marriage, although sometimes services and sexual relations of the spouse are included in the recovery for loss of consortium. Johnston, *Texas Recognizes a Cause of Action for Negligent Impairment of Consortium for Both Husband and Wife*, 10 *Texas Tech L.Rev.* 1180, 1183 (1979). The

time has come, as reflected by the reasoning of the Court in *Bedgood* and *Whittlesey*, for there to be recovery in Texas for damages for loss of love and affection and for loss of consortium in a wrongful death case. Any distinction made between an incapacitated spouse in a negligence action and one wrongfully killed as a result of negligence is an artificial one at best.

For the law to maintain its viability and to usefully serve our citizenry, it must be reflective of the needs, realities and social trends of a modern, complex society. The fact that the Texas Supreme Court is quite conscious of this premise is evident by their language in *Whittlesey* and *Bedgood*. In the words of the Court:

> The law is not static; and the courts, whenever reason and equity demand have been the primary instruments for changing the common law through a continual reevaluation of common law concepts in light of current conditions.
> *Whittlesey v. Miller, supra.*

The United States Supreme Court in addressing and recognizing the proper role of the courts in this evolutionary process in a case involving a death on the high seas which just happened to deal with the question of compensation for loss of society, examined the rules applicable in various conflicting jurisdictions and took a humanitarian stance permitting such recovery consistent with the demands of our time. *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 588, 94 S.Ct. 806, 816, 39 L.Ed.2d 9 (1973). The risks of diversity jurisdiction, of course, are apparent in situations such as these where the trial court must, in effect, rule by prediction but, nevertheless, in accordance with its responsibilities, must rule. The compelling equitable considerations in favor of the extension of remedies as discussed in this opinion, hopefully, reduce the risk in this case normally associated with diversity predictions.

The cost and maintenance of the deceased during their lives was considered by the Court. See *Neal v. Saga Shipping Co.*, 407 F.2d 481 (5th Cir. 1969), cert. denied, 395 U.S. 986, 89 S.Ct. 2143 (1968), reh. denied 396 U.S. 871, 90 S.Ct. 45, 24 L.Ed.2d 129 (1969); *Murray v. Templeton, supra.*

## CONCLUSION

The Court, therefore, will enter Judgment on behalf of Plaintiff Kelly Crook in the amount of Four Hundred Thousand and 00/100 Dollars ($400,000.00), for Plaintiff Lee Roy Crook in the amount of Seven Hundred Thousand and 00/100 Dollars ($700,000.00), for Plaintiff Reid Stanford in the amount of Four Hundred Fifty Thousand and 00/100 Dollars ($450,-000.00), and for Intervenors Dennis Fowler and James West in the amount of Fifteen Thousand Seven Hundred Seventy-five and 00/100 Dollars ($15,775.00).

The Court has not overlooked the fact that the minor child, Holly Crook, was also a victim of this tragedy and that Plaintiffs Lee Roy Crook and Kelly Crook have suffered that special loss of being deprived of the benefits that flow from the relationship of father-daughter and siblings; however, the Court makes no award for these damages since they were not included in the suit and the parties nor the Court had the benefit of the reasoning of the concurring opinion in the *Bedgood* case at the time this case was tried. Given the circumstances of a claim being made for the death of Holly Crook consistent with this opinion, the Court feels that an award for damages would have been appropriate.