John Henry DAVIS et al., Appellants,

v.

Marvin THOMAS, Guardian of the Estate of Dan D. Davis, Sr., an incompetent, Appellee.

No. 983.

Court of Civil Appeals of Texas, Tyler.

Jan. 27, 1977.

First Rehearing With Written Opinion Denied March 10, 1977.

Second Motion for Rehearing Denied March 31, 1977.

 

R. Jack Ayres, Jr., Kelsoe, McDonald & Ayres, Dallas, for appellants.

Earl Luna, Thomas V. Murto, III, Luna & Murto, Dallas, for appellee.

McKAY, Justice.

Marvin Thomas, Guardian of the Estate of Dan D. Davis, Sr., Incompetent, filed a petition in the Probate Court Number Two of Dallas County, in which court the guardianship was pending, to cancel one deed from Dan D. Davis, Sr., to Paul Davis to a house and lot in Garland, and to cancel two deeds from Dan D. Davis, Sr., to John Henry Davis covering four tracts of land in Hunt County. It was alleged that Dan D. Davis, Sr., was 93 years of age, unable to comprehend his rights or manage his property and that Paul Davis and John Henry Davis used undue influence on him to cause him to execute such deeds. The petition was filed on November 25, 1975, and on January 8, 1976, the Probate Court rendered a default judgment for Thomas, Guardian, cancelling the deeds and removing the cloud on the title of all of the tracts of land. John Henry Davis and Paul Davis appeal from the default judgment and the order overruling their motion for new trial.

Appellants, John Henry Davis and Paul Davis, in their first point complain that the trial court "committed fundamental error in purporting to render a default judgment" because the court was without jurisdiction to render such judgment. The suit to cancel deeds bears number 75–2959–P/2–A, while the guardianship proceeding bears the number 75–2959–P/2.

Art. V, Sec. 16, Constitution of Texas, provides that the county court "shall not have jurisdiction of suits for the recovery of land."

Art. 1951, V.A.C.S., provides that "the county court shall not have jurisdiction of . . . suits of the recovery of lands . . . ."

Art. 5, Sec. 8 of the Constitution of Texas, provides that the district court shall have original jurisdiction " . . . of all suits for trial of title to land and for the

enforcement of liens thereon." Art. 1906, V.A.C.S., contains the same language verbatim.

An amendment to Art. V, Section 8 of the Constitution was adopted November 6, 1973, which provided in part:

"The district court, concurrently with the county court, shall have the general jurisdiction of a probate court. . . . The legislature, however, shall have the power, by local or general law, Section 16 of Article V of this Constitution notwithstanding, to increase, diminish or eliminate the jurisdiction of either the district court or the county court in probate matters, and in cases of any such change of jurisdiction, the legislature shall also confirm the jurisdiction of the other courts to such change."

Section 5 of the Texas Probate Code was amended effective November 6, 1973, to provide in subdivision (d):

"All courts exercising original probate jurisdiction *shall have the power to hear all matters incident to an estate*, including but not limited to all claims by or against an estate, *all actions for trial of title to land incident to an estate* and for the enforcement of liens thereon incident to an estate [and of] all actions for trial of the right of property incident to an estate." (Emphasis added.)

By an amendment in 1975, "and actions to construe wills" was added.

It will be noted from the above listed provisions of the Constitution and statutes that the county court "shall not have jurisdiction of suits for the recovery of land," and that the district court "shall have original jurisdiction . . . of all suits for the trial of title to land . . . ." By amendment to Art. V, Sec. 8 of the Constitution the legislature was authorized "to increase, diminish or eliminate the jurisdiction of either the district court or the county court in probate matters," and such amendment contained the language "Section 16, of Article V of this Constitution notwithstanding," but it did not affirmatively repeal Section 16, Article V.

Furthermore, the amendment to Section 5 of the Probate Code, which authorizes the district court to have "original control and jurisdiction over executors, administrators, guardians and wards under such regulations as may be prescribed by law," did not repeal Art. 1906 or Art. 1951.

■ It is unquestioned that prior to November 6, 1973, a county court or a probate court did not have any jurisdiction to try questions of title to land. *Doggett v. Nitschke*, 498 S.W.2d 339 (Tex.1973).

Appellants argue that for the probate court to have jurisdiction of the instant case it must be shown that the suit to cancel two deeds was an action *incident to an estate*, and if such suit was not incident to the guardianship of the Estate of Dan D. Davis, Sr., that is, a separate suit to cancel deeds, then the probate court is without jurisdiction. Appellants also contend that appellee has admitted and bound himself, in his motion to strike the guardianship proceeding from the record on appeal, that the guardianship records "are instruments in a separate cause of action . . . ."

■ The word "incident" has been defined as "belonging, pertaining, appertaining, accessory, relating, natural," Soule's Dictionary of English Synonyms, Bonanza Books, 1959, "something dependent on or subordinate to something else of greater or principal importance; dependent on or relating to another thing." Webster's Seventh New Collegiate Dictionary, G. & C. Merriam Co., 1969. Words and Phrases, Vol. 20A, p. 17, PP, defines incident as "something dependent upon, appertaining or subordinate to, or accompanying something else of greater or principal importance." We are of the opinion that a suit to cancel a deed executed by a ward alleged to be incompetent is an action pertaining to or related to or involved in or with a guardianship proceeding and is, therefore, incident to the guardianship estate. We hold, therefore, that the probate court had jurisdiction of the suit to cancel the deeds from the ward. It is noted that the trial court in the instant case is a statutory probate court and not a constitutional county court.

In *Parr et al. v. White, Administratrix et al.*, 543 S.W.2d 440, Tex.Civ.App.—Corpus Christi, delivered October 29, 1976, the court held that suits "seeking to either recover possession of, clear title to, or collect damages for the conversion of property" to determine whether the property was community were incident to the administration and partition of an estate of a deceased person, and the probate court had jurisdiction of such actions. The trial court was not a constitutional county court.

The Corpus Christi Court of Civil Appeals in *Folliott v. Bozeman*, 526 S.W.2d 577 (1975, writ ref'd n. r. e.), also held that the district court and the probate court had concurrent jurisdiction of a suit to cancel a trustee's deed which involved property of a deceased whose estate was in administration. The trial court was not a constitutional county court.

█ We are not in agreement with the argument of appellants that because appellee styled, numbered or admitted the suit in the probate court to cancel deeds was a separate action that such admission or act would divest the probate court of jurisdiction.

█ Nor do we agree with appellants' contention that the probate court was without jurisdiction because the effective date of Art. V, Sec. 8 of the Constitution and Sec. 5 of the Probate Code was subsequent to the date of execution of the deeds sought to be set aside. It is pointed out by the court in *Regal Properties v. Donovitz*, 479 S.W.2d 748, 751 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.), and authorities there cited, that although the constitutional provision in Art. 1, Sec. 16, "forbids the retroactive application of legislative enactments, statutes relating to procedure or remedies do not fall within this constitutional ban."

Appellants' first point is overruled.

By their second point, appellants contend the trial court abused its discretion in overruling appellants' motion for new trial after default judgment had been rendered against them because their failure to appear and answer was not intentional or the result of conscious indifference, but was due to a mistake or accident, and the motion for new trial set up a meritorious defense and was filed at a time when the granting of same would not cause delay or injury to appellee. A chronological sequence of events must be recited in order to evaluate this point.

On October 13, 1975, Edith Faye Davis Gilleland, daughter of Dan D. Davis, Sr., filed an application for guardianship for Dan D. Davis, Sr., alleging that he was physically and mentally incompetent to take care of himself and his estate, and requesting that she, Mrs. Gilleland, be appointed guardian of the person and estate. The application was filed by Earl Luna, attorney. On October 20, 1975, G. H. Kelsoe, Jr. and R. Jack Ayres, Jr., attorneys, filed an answer for Davis generally and specially denying he was unable to care for himself or to manage his affairs.

The application for guardianship came on for hearing before Probate Court No. 2 on November 12, 1975, with same counsel present, and counsel for both sides stipulated Dan D. Davis, Sr., was unable to take care of his affairs and a guardian should be appointed. A full hearing was had, however, together with medical testimony, at the conclusion of which an order was signed by the court finding Davis incompetent and appointing Marvin Thomas, an attorney, guardian of the estate of Dan D. Davis, Sr. After another hearing on November 25, 1975, the court appointed John Henry Davis, a son, guardian of the person.

On November 21, 1975, John Henry Davis and Paul Davis, by their attorney, G. H. Kelsoe, filed suit in the 162nd District Court for declaratory judgment that each of the plaintiffs was the lawful owner, respectively, of land deeded to them by their father, Dan D. Davis, Sr., at a time when he was competent, and that said deeds were valid and binding. The defendants were Edith Faye Davis Gilleland, O. R. Gilleland, Dan Davis, Jr., and Marvin Thomas.

On November 25, 1975, the instant suit to cancel deeds from Dan D. Davis, Sr., to John Henry Davis and Paul Davis, his sons,

was filed by Marvin Thomas, Guardian, appellee here, in the probate court where the guardianship was pending. Both John Henry Davis and Paul Davis were served with citation on December 10, 1975. These citations were filed December 15, 1975, with the County Clerk.

On January 8, 1976, Marvin Thomas, Guardian, obtained a default judgment against John Henry Davis and Paul Davis cancelling and setting aside the deeds from Dan D. Davis, Sr., with Earl Luna representing Thomas. The record reveals that no answer had been filed by either defendant, and that during the proceeding Marvin Thomas and Earl Luna advised the court they did not know whether G. H. Kelsoe represented the defendants, that he might be their attorney, but they had not been in touch with him since they felt they had a paramount duty to their incompetent ward to obtain the default judgment rather than extend professional courtesy by contacting Kelsoe.

On January 22, 1976, John Henry Davis and Paul Davis, by their counsel Kelsoe, filed a plea in abatement to the suit by Thomas to cancel deeds alleging there was a district court case then pending to determine the validity of the deeds and that the district court had acquired jurisdiction. A general denial was pled subject to the plea in abatement.

On January 27, 1976, a motion for new trial was filed by Kelsoe in behalf of John Henry Davis and Paul Davis, and on January 29, 1976, an amended motion was filed alleging that the failure to answer or be present in court was not intentional, was not the result of conscious indifference on their part, but was due to an accident and oversight on their part, and that no material delay or prejudice would result to plaintiff Thomas from granting a new trial. They further alleged they had a meritorious defense as evidenced by their filing a suit in the district court to determine the validity of the deeds in question. They further alleged they were ignorant of the effect or the substance of the service of process until January 22, 1976, and operated under the mistaken belief that such process was ancillary to other pending litigation and required no further action on their part. They further pled they stood willing to abide by any action ordered by the court to insure that no prejudice would result to the plaintiff including the payment of all costs incurred by the plaintiff in obtaining the default judgment. Attached to the motion was an affidavit by John Henry Davis and an affidavit of Kelsoe.

Plaintiff Thomas, through his attorney Luna, answered the motion by alleging the motion for new trial was filed too late under Rule 329b, T.R.C.P., and that Kelsoe had actual knowledge of the filing of the suit and received a copy of the petition on the day it was filed, and that Kelsoe was asked if he could accept service for his clients, and that Kelsoe later advised that he would not or could not accept service. It was further alleged that Kelsoe or his associate had actual knowledge of the default judgment within ten days after it was rendered.

On February 5, 1976, the court held a hearing on the motion for new trial, and, at its conclusion, the court overruled the motion and signed the order to that effect on February 6, 1976.

At the hearing on the motion for new trial Kelsoe testified that he left town on the 9th or 10th of January, 1976, and returned the 18th or 19th; that he called John Henry Davis to ask if he could locate the witnesses who knew his father in 1973 so he could ask for a setting in the district court case; that John Henry told him he had been trying to call him because he, John Henry, had been served with some papers he thought involved the guardianship and that he had left word at Kelsoe's office to call him, and since Kelsoe did not call he assumed everything was all right; that John Henry Davis also said he had received a letter from the clerk that he did not understand, and he had been trying to reach Kelsoe about that matter. Kelsoe testified that he then learned that a default judgment had been rendered, and he had a

motion for new trial prepared and filed and it was filed within 30 days.

Kelsoe further testified that on the same day as the hearing on appointment of a guardian of the person of Dan D. Davis, Sr., Sibley, Luna's associate attorney, handed him a copy of the petition in the instant suit and Sibley called him in a day or two and told him, "Luna wants you to answer it today," and that he could not do so and told Sibley, and Sibley replied he would get out a citation.

John Henry Davis testified that he and Paul Davis were each served with a paper by an officer, and that he tried to call Kelsoe and tell him about being served, but was unable to reach him; that he did not know what the papers meant, but he thought the paper pertained to the district court suit filed by Kelsoe for him; that he later got a letter from the clerk, but did not know what it was about and then tried to reach Kelsoe, but did not reach him until Kelsoe called him about January 22, 1976, and he asked Kelsoe what the papers and letter meant and he then learned for the first time there was a default judgment; that he did the only thing he knew to do and that was to call his lawyer and that he would not deliberately do anything to get himself in trouble with the court; that it was an accidental mistake.

In further testimony John Henry Davis testified that on the occasion when his father, Dan D. Davis, Sr. signed the deeds in question in 1973, that he was present; that his father was normal; that he knew his children; that he knew what property he owned, and he knew the nature and consequences of his act; that he was of sound mind when he signed the deeds.

Luna testified that when the hearing was held on the default judgment he knew that Kelsoe and Ayres represented John Henry Davis and Paul Davis at the guardianship trial, and, secondly, that Kelsoe and Ayres had filed a suit for these same parties in the district court to seek a judgment declaring the deeds involved here valid.

■ We have set out herein the record in great length and detail in order to determine whether the record before us brings the case within the rule laid down in *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (Comm. of Appeals, Sec. A, 1939, opinion adopted) and followed by *Ivy v. Carrell*, 407 S.W.2d 213, 215 (Tex. 1966), as the rule in Texas:

"A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff."

■ In our opinion, the record reveals that the failure to answer before judgment on the part of the appellants was not intentional, nor was it the result of conscious indifference on their part, but was due to accident or mistake or an inadvertent circumstance. We are also of the opinion that appellants have demonstrated in the record that they have a meritorious defense, and it appears the motion was filed at a time when it would have caused no delay or injury to the appellee. We hold the trial court abused its discretion in failing to grant a new trial, and appellants' point two is sustained.

Judgment of the trial court is reversed, and the cause is remanded.

## ON MOTION FOR REHEARING

■ Appellee contends that this court was without jurisdiction to consider appellant's appeal in this case since the default judgment was rendered on January 8, 1976, and the motion for new trial was not filed until January 27, 1976, more than ten days after judgment and outside of the time prescribed by Rule 329b(1), T.R.C.P. Appellee argues that although the trial court retains jurisdiction over its judgment for 30 days after rendition, that "since a motion for new trial filed late is a nullity, an order

overruling such a motion presents nothing to appeal from," citing *A. F. Jones & Sons v. Republic Supply Co.*, 151 Tex. 90, 246 S.W.2d 853, 854, 855 (1952); *Ferree's Band Instrument Tools & Supplies, Inc. v. Claxton*, 472 S.W.2d 334, 335 (Tex.Civ.App.— Corpus Christi 1971, no writ); *Dean v. Warren*, 464 S.W.2d 672, 673 (Tex.Civ.App.— Tyler 1971, no writ); *Calk v. Gans & Smith Ins. Agency, Inc.*, 535 S.W.2d 755, 757 (Tex. Civ.App.—Tyler 1976, no writ); *Selman v. Ross*, 302 S.W.2d 752, 754 (Tex.Civ.App.— Galveston 1957, no writ). All of these cases involved the overruling of a motion for new trial following a trial on the merits and not a default judgment as in the present case. The rule in *McEwen v. Harrison*, 162 Tex. 125, 345 S.W.2d 706 (1961), covers the present situation. In that case Chief Justice Calvert negated the claims of the appellee in this case when he said:

> "Our construction of the rule will give a diligent defendant with a meritorious defense every opportunity to protect himself against an unwarranted default judgment. If he is not served with citation and learns of the judgment within 30 days after its rendition, he may file a motion for new trial, which the court is at liberty to grant, *and if his motion is overruled he may obtain relief by appeal. . . .*" 345 S.W.2d 706 at 710. [Emphasis added.]

We believe this case is controlling and appellee's contention is without merit.

 The trial court has plenary power over its judgments during thirty days after rendition of judgment or before a timely filed motion for new trial has been overruled. During the thirty-day period the trial judge retains plenary power and jurisdiction to take whatever action he may deem desirable including the granting of a new trial. *Thompson v. Gibbs*, 504 S.W.2d 630, 632 (Tex.Civ.App.—Dallas 1974, mandamus conditionally granted); *Quintanilla v. Seagraves Ford, Inc.*, 522 S.W.2d 274, 276 (Tex.Civ.App.—Corpus Christi 1975, no writ).

Moreover, even if appellant did not timely file his motion for new trial,

appellant established his case as a proper bill of review under *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939), as discussed in our original opinion. The case was treated by both parties before this court as a bill of review, the main point of contention being the elements set out in the *Craddock* case. It is immaterial how the plaintiff styles his petition if the averments are such as to require its consideration as a bill of review. It is the substance of the petition that will determine whether it is to be treated as a bill of review or merely as a motion for new trial. *Freeman v. Freeman*, 160 Tex. 148, 327 S.W.2d 428, 433 (1959); *Carnes v. Kay*, 210 S.W.2d 882, 884 (Tex.Civ.App.—Amarillo 1948, no writ); *Custer v. McGough*, 184 S.W.2d 668, 670 (Tex.Civ.App.—Eastland 1944, no writ). We, therefore, hold that even if the motion in question was not timely filed as a motion for new trial, it could be considered as a bill of review and was so considered by the trial court; hence, this court has jurisdiction of the appeal therefrom.

Appellee's motion for rehearing is overruled.