**PIPER AIRCRAFT CORPORATION, et al. and United States Fire Insurance Co., Appellants,**

v.

**Vicki Leigh YOWELL, et al., Appellees.**

**No. 2-83-072-CV.**

Court of Appeals of Texas, Fort Worth.

June 28, 1984.

Brown, Herman, Scott, Dean & Miles and Beale Dean, and Stephen C. Howell, Fort Worth, for appellants.

Byrd, Davis & Eisenberg, and Tom Davis, Austin, David Horger, Jr., Garrett, Stahala & King, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, for appellees.

Before FENDER, C.J., and HUGHES and HILL, JJ.

## OPINION

FENDER, Chief Justice.

This is an appeal from a judgment awarding damages to the surviving widows, parents and children of four persons who died when the Piper airplane in which they were riding, as passengers, disintegrated in mid-air. All claims with reference to the pilot have been settled and form no part of the instant appeal.

We reverse and remand with instructions.

At the trial of this cause the jury found against Piper Aircraft Corporation on all negligence and causal issues. Piper declines to admit liability but agrees that there is sufficient evidence to support the verdict as to responsibility. This appeal is based on the following allegations of error:

1. An instruction to the jury to consider "loss of inheritance of prospective accumulations" in the absence of specific pleading of same.

2. (Alternatively) Insufficient evidence in the record to sustain "loss of inheritance."

3. Permitting the jury to assess damages for mental anguish of the deceased persons because exclusive jurisdiction of such matters rests with the Probate Court of Tarrant County.

4. (Alternatively) Insufficient evidence to support a finding of mental anguish on the part of the deceased persons.

5. (Alternatively) The amount allowed for mental anguish of the deceased persons was excessive.

6. (Alternatively) Allowing a trial amendment on the last day of trial to authorize recovery for mental anguish of the deceased persons and refusing to grant Piper a continuance or postponement following such amendment.

7. Permitting recovery for "companionship, society and affection" to spouses, children and parents *under the law then existing.*

The United States Fire Insurance Company [hereinafter U.S. Fire] entered the lawsuit as an intervenor. U.S. Fire is the workers' compensation carrier for the decedents, and it intervened in order to enforce the right of reimbursement for payments of death benefits to the plaintiffs.

The cause was tried to a jury, which found that the aircraft was defectively designed by Piper, and that such defective design was a producing cause of the accident. The jury returned a verdict in favor of the plaintiffs for $8,770,148.60, and the court ordered $97,020.00 of that amount paid to U.S. Fire as reimbursement for death benefits previously paid to the plaintiffs.

In addition, U.S. Fire was released from liability of payment of any further workers' compensation benefits. Finally, the trial court determined the amount of attorneys' fees owed by U.S. Fire, and ordered U.S. Fire to pay 15% of that amount to its own attorneys and 85% to plaintiffs' attorneys. The court further ordered U.S. Fire to pay a portion of plaintiffs' expenses which they incurred in prosecuting this suit.

The crash occurred on February 22, 1977, near Springdale, Arkansas. Suit was filed by persons purporting to be either the executrix or the administratrix of the estates

of the passengers on behalf of all interested parties on February 13, 1979. The plaintiffs amended their petition on December 8, 1982, and trial began five days later.

A full factual resume of this lawsuit could be extremely complicated because five persons died in the crash leaving spouses, children and parents to sue the manufacturer of the airplane, and additionally an aircraft service company which the jury found to be not negligent and which is not part of the appeal. In light of the jury verdict and our disposition of this appeal, therefore, we need not delineate all of the facts of the case. We will refer to the plaintiffs generally as such—meaning the spouses, children and parents, unless specific reference is made to one of the three sub groups. We will also refer to the deceased passengers as such—the pilot having been removed from the lawsuit by accord and satisfaction. The manufacturer will generally be referred to as Piper.

In addition to Piper's appeal, U.S. Fire has filed a brief as an appellant in which it asserts six points of error attacking the trial court's apportionment of costs and attorneys' fees. Further, the plaintiffs have asserted a crosspoint in which they argue that the trial court erred in failing to grant prejudgment interest on the damages from the date of the crash until the entry of the judgment. Before we address these arguments, however, we will first consider Piper's points of error.

Piper complains specifically in its first point of error that the trial court erred in submitting a special issue to the jury regarding loss of inheritance damages, when such damages were never pled by the plaintiffs. In order to better understand the problem posed by this point, we must first undertake an analysis of plaintiffs' pleadings.

The petition first describes the nominal plaintiffs and the defendants. Next, the real plaintiffs in interest are described particularly together with the statement that the nominal plaintiff "brings this action for the use and benefit of all persons entitled to recover for the wrongful death of [deceased]." Following this the petition sets forth the allegations of negligence and causation together with the relationship of the two defendants.

Next come four separate paragraphs concerning the deceased passengers which are identical as to form with only names, numbers and relationships furnishing any variance. In each such paragraph the history and projections of a deceased's earnings are set forth with great particularity, and summarized in a total. Funeral expenses are set forth in lump sum, and the sentence appears—"This does not take into consideration the loss of guidance, services, training, protection and counseling that his family would have enjoyed had he lived, or intangibles such as their loss of love, affection and companionship, or mental anguish."

Near the end of the petition the sentence appears—"Based on the salary history of each of plaintiff's decedents over the last years of their lives, with their potential and value to the company at the time of their deaths, their future remunerations can be calculated by extrapolation of their past earnings growth."

Lastly, there appears the prayer, set out herein *in haec verba:*

"WHEREFORE, PREMISES CONSIDERED, plaintiffs pray that defendants be cited to appear herein and answer, and that on final hearing plaintiffs have judgment against defendants for damages, with interest thereon at 9% per annum, for costs of suit, and for such other and further relief, both general and special, at law or in equity, to which plaintiffs may show themselves justly entitled."

Since lawsuits are generally filed for one person to recover something to which he or she is entitled from another person who is obligated to pay or furnish such entitlement, it seems rather singular that at no point in the petition is there found any claim of right as to any plaintiff. Since no objection or exception to this was taken by the defendants, we are left to infer that

plaintiffs are seeking recompense for a fair share of lost earnings. And we must look by negative inference to a claim for "guidance, services, etc.," because such claims were specifically not "taken into consideration" in the recitation of assets.

It is clear, therefore, that there is nothing in the pleadings which could be interpreted as a demand for loss of inheritance damages. No trial amendment was requested or allowed to include loss of inheritance in plaintiffs' claims. The court submitted the following issue:

List below in the spaces provided the sum of money, if any, if paid now in cash, that you find from a preponderance of the evidence would fairly and reasonably compensate each listed person for the damages resulting from the death of his or her respective decedent [additional instructions omitted]. Answer in dollars and cents, if any

(a) Loss of care, maintenance, support, services, advice, counsel, protection and contributions, *including loss of inheritance of prospective accumulations*, of pecuniary value, if any, suffered by each wife in the past, and which in reasonable probability she would have received from her husband in the future during his lifetime if he had lived. [emphasis added].

(d) Loss of maintenance, support, services, cost of education and the contribution, *including loss of inheritance of prospective accumulations*, of pecuniary value, if any, that each child has suffered in the past, and which in reasonable probability will be suffered by each child in the future, resulting from the death of his or her father. [emphasis added].

Piper timely objected and excepted to the italicized portion of the charge.

■ Generally, if a plaintiff makes a general allegation of damages, it will suffice as a basis for proof of those damages which naturally and necessarily result therefrom, for the law implies such damages; but if plaintiffs choose to particularize the injuries arising from a harm or hurt

all that is intended to be proven must be alleged. *Weingartens, Inc. v. Price*, 461 S.W.2d 260 (Tex.Civ.App.—Houston [14th Dist.1970, writ ref'd n.r.e.). In the instant case, Plaintiffs alleged and proved loss of earnings; loss of guidance, services, training, protection and counseling; loss of love, affection and companionship; and plaintiffs' (the survivors') mental anguish.

Having alleged and proved the special damage (*see Weingartens, supra*) of loss of earnings plaintiffs would now try to piggy-back the loss of inheritance thereon by saying that the lost future earnings (for which they have received damages) would also have become accumulated to form an inheritance—this with no pleadings to alert the court or the defendants. The plaintiffs would have the jury disburse this nebulous inheritance as a general damage, somehow suffered specifically by each plaintiff, without regard to the laws of descent and distribution or the making of wills.

To sustain such a position plaintiffs must assume that there was a vested right to inherit in existence prior to the death of the passengers and that death deprived the plaintiffs of such a right. The authorities are contrary to such an assumption.

In *Clark et al v. Gauntt*, 138 Tex. 558, 161 S.W.2d 270 (1942) the Supreme Court stated:

"[A]s his expectant heir she had no existing interest, right or title in his interest in the property. She had only an expectancy of inheritance, which, although it is carelessly referred to in some of the decisions as a right, is nothing more than a hope or a possibility of title. One cannot maintain a suit for the enforcement or adjudication of a right in property that he expects to inherit, because he has no present right or interest in the property."

Further, in *Davis et al v. First National Bank of Waco*, 139 Tex. 36, 161 S.W.2d 467 (1942) the same court stated:

"A living person has no heirs. An expectant heir has no present interest or right in property that he may subsequently inherit and consequently he can-

not maintain a suit for the enforcement or adjudication of a right to the property."

■ There thus being no general right to inherit, this is a matter to be determined on a case-by-case basis with proper pleading and proof. Rule 56, Texas Rules of Civil Procedure says "When items of special damage are claimed, they shall be specifically stated." We hold that loss of inheritance is a special damage.

■ Piper's first point of error is sustained. Since the jury awarded loss of inheritance damages as part of a lump sum that included other wrongful death damages, it is impossible to determine what amount was awarded for loss of inheritance. Therefore, the entire wrongful death judgment must be reversed as to the issue of damages. *Greyhound Lines, Inc. v. Duhon,* 434 S.W.2d 406 (Tex.Civ.App.— Houston [1st Dist.] 1968 no writ). Furthermore, that judgment must be reversed as to liability as well as damages, because in a tort case the issues of liability and damages are indivisible and must be tried together. *Roberts v. Mullen,* 446 S.W.2d 86 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r. e.).

In its second point of error, Piper contends as an alternative to its first point that there is insufficient evidence in the record to support an award for loss of inheritance damages. Because we have sustained Piper's first point, however, we need not consider this alternative point.

We next turn to a consideration of Piper's third, fourth, fifth and sixth points of error, which relate to a trial amendment dictated by the plaintiffs into the record on the last day of trial. The trial amendment asserted for the first time a survival cause of action under the Survival Statute, TEX. REV.CIV.STAT.ANN. art 5525 (Vernon 1958). The amendment reads as follows:

Plaintiffs, Vicki Leigh Yowell, Nancy F. Fulkerson, Elizabeth Sue Ingram, and Dovie R. Ward also bring suit under art. 5525 for the mental anguish suffered by Howard Reed Yowell, James Luther Ward, Jr., Jimmie R. Fulkerson, and

Fabe Ingram, Jr. from the time that the aircraft broke up until they hit the ground.

Pursuant to this amendment the trial court submitted a special issue to the jury, and the jury concluded that each decedent had suffered mental anguish damages in the amount of $500,000.

■ It is well settled that survival actions, such as the one asserted in the plaintiffs' amendment, and wrongful death actions are separate and distinct causes of action. *Landers v. B.F. Goodrich Co.,* 369 S.W.2d 33 (Tex.1963). An action for wrongful death is conferred by article 4671 *et seq.* upon the surviving husband, wife, child, and parents of a decedent. A survival action, on the other hand, is a common law action for damages sustained by the decedent and his estate as a result of injuries inflicted by the defendant. This cause of action survives to the heirs or legal representatives under the provisions of art. 5525. *Landers, supra,* at 35.

■ Although Piper does not challenge the trial court's jurisdiction over the wrongful death action asserted by the appellees, it argues in its third point of error that the court had no jurisdiction over the survival action asserted in the trial amendment. Piper claims that under § 5A(b) of the Texas Probate Code, exclusive jurisdiction over the survival cause of action rests in Tarrant County statutory probate court. TEX.PROB.CODE ANN. § 5A(b) (Vernon 1980). Thus, Piper contends that the trial court erred in allowing the plaintiffs to assert a survival cause of action and in submitting a charge to the jury on mental anguish damages. We agree.

Section 5A(b) provides, in pertinent part:

In situations where the jurisdiction of a statutory probate court is concurrent with that of a district court, any cause of action appertaining to estates or incident to an estate shall be brought in a *statutory probate court rather than in the district court.* [emphasis added].

In the instant case, Piper argues that survival actions such as the ones brought by

the plaintiffs for the decedents' mental anguish are matters "incident to an estate" within the meaning of § 5A(b). Piper further contends that under the provisions of § 5A(b), any matter incident to an estate must be brought in statutory probate court rather than in district court when probate proceedings regarding the estate have already been filed in statutory probate court. Since administration proceedings had been filed in a Tarrant County statutory probate court prior to the institution of the instant suit, Piper claims that pursuant to § 5A(b) the statutory probate court had exclusive jurisdiction to hear the survival actions. Thus, the district court erred in exercising jurisdiction over the plaintiffs' survival claims.

In support of its contention that a survival action is a matter incident to an estate within the meaning of § 5A(b), Piper relies heavily on *Seay v. Hall*, 663 S.W.2d 468 (Tex.App.—Dallas 1983, writ granted). In that case the Dallas Court of Appeals held that a survival claim is an *asset* of an estate, and therefore a matter incident to the estate. The court reasoned that a survival claim must be an asset of the estate because according to § 3(*l*) of the Probate Code an estate includes the decedent's personal property, which is further defined in § 3(z) as including "choses in action"[1]. Since a survival claim survives the decedent and may be asserted by the heirs of the estate, it is an asset of the estate. *Seay, supra*, at 470.

Having determined that a survival action is an asset of an estate, the *Seay* court held that as a result of its asset status such an action was a matter "incident to an estate" within the meaning of § 5A(b). The court cited *Lucik v. Taylor*, 596 S.W.2d 514 (Tex. 1980), in which the Supreme Court recognized the necessity that a probate court protect and preserve assets of the estate until their status can be determined. The *Seay* Court thus concluded that it was necessary as a matter incident to the estate

that the probate court determine the status (i.e. the validity) of the survival claim. *Seay* at 471.

The holding in *Seay* that a survival claim is an action "incident to an estate" within the meaning of § 5A(b) appears correct and is supported by other argument. As noted by Piper in its brief, § 5A(b) defines the phrase "incident to an estate" to include all claims by an estate. In *Landers v. B.F. Goodrich Co., supra*, the Supreme Court indicated that an article 5525 survival action is a claim by an estate. The Landers court held that a survival claim is a "suit *on behalf of the estate* to recover for medical and funeral expenses, property damage, physical pain and suffering, and other damage sustained by the decedent prior to his death." [emphasis added]. *Landers* at 35. Since a survival claim is an action brought by the legal representatives of an estate for the benefit of the estate it is clear that it must be a claim by the estate and thus a matter incident to an estate within the meaning of § 5A(b).

■■■ The most obvious reason for holding that a survival claim is an action incident to an estate, however, is that such a claim fits the general definition of actions incident to an estate. An action is incident to an estate when the outcome will have a direct bearing on the assimilation, collection, and distribution of the decedent's estate. *Lucik v. Taylor, supra, Pullen v. Swanson*, 667 S.W.2d 359 (Tex.App.— Houston [14th Dist.] 1984, no writ). Since a survival claim is an action on behalf of the estate which, if successful, will result in money damages accruing to the estate, such a claim will obviously have a direct bearing on the assimilation, collection, and distribution of the estate.

Having determined that a survival claim is an action incident to an estate within the meaning of § 5A(b), we must next consider Piper's claim that when administrative proceedings regarding an estate have been filed in statutory probate court, § 5A(b)

---

1. Black's Law Dictionary defines "chose in action" as a right of bringing an action or right to recover a debt or money.

grants exclusive jurisdiction of all matters incident to the estate to that probate court. This construction of § 5A(b) has been adopted both in *Seay v. Hall, supra,* and in *Pullen v. Swanson, supra.* In *Seay,* the court stated that "where an administration is pending, any matter which is incident to the estate *shall be brought in the statutory probate court and cannot be brought in the district court." Seay* at 472. [emphasis added]. In *Pullen* the court held that "the ... rule is that the statutory probate court has the exclusive power to hear all matters incident to an estate ... 'in those instances where a probate proceeding, such as an administration of an estate, is actually pending in the [statutory probate] court at the time the suit is filed.'" *Pullen* at 363, quoting *Wolford v. Wolford,* 590 S.W.2d 769 (Tex.Civ.App.— Houston [14th Dist.] 1979, writ ref'd n.r.e.); see also *Bank of Southwest, Nat. Ass'n v. Stehle,* 660 S.W.2d 572 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). The *Pullen* court also noted that the increase in probate court jurisdiction effected by § 5A(b) was intended to allow such courts to more fully and quickly settle a decedent's estate in one proceeding. *Pullen,* at 363.

These cases are thus clear in their holding that when proceedings regarding an estate are already pending in statutory probate court, a matter incident to the estate must be brought in the probate court rather than in the district court. Since it is also clear that a survival action is a matter incident to an estate, the logical conclusion is that such an action may not be brought in district court when an administration for the estate is already pending in statutory probate court. *Seay v. Hall, supra.*

In their brief and post submission brief, however, the plaintiffs claim that § 5A(b) is inapplicable to the case at bar, and assert several arguments in support of this proposition. They first argue that § 5A(b) cannot apply here because it did not become effective until August 27, 1979, while the original petition was filed February 13, 1979. The plaintiffs contend that pursuant to TEX.REV.CIV.STAT.ANN. art. 5539(b) (Vernon 1958), the 1983 trial amendment

asserting the survival actions "related back" to the time of filing of the original petition. Because of the relation back of the trial amendment to February 13, 1979, the district court acquired jurisdiction over the survival claim before the effective date of § 5A(b). Once the district court acquired such jurisdiction, they argue, it could not be divested by § 5A(b). This argument, however, is without merit.

Article 5539(b), entitled "Limitations as affecting amended and supplemental pleading" is clearly inapplicable to the case at bar. It provides, in pertinent part:

> Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grown out of a new, distinct or different transaction and occurrence ..."

Article 5539(b) thus suspends the statute of limitations with regard to amended and supplemental pleadings when those pleadings arise out of the same transaction or occurrence upon which the original litigation was based. It pertains only to the issue of whether an amended or supplemental pleading is barred by the statute of limitations, and does not authorize the "relation back" of an amendment to the original time of filing for the purposes of determining jurisdiction. None of the cases cited by the plaintiffs involve any jurisdictional issue; they all involve limitations questions with respect to amendments to pleadings. *See Leonard v. Texaco, Inc.,* 422 S.W.2d 160 (Tex.1967); *Miteff v. Guardian Title Co.,* 612 S.W.2d 693 (Tex.Civ.App.—Fort Worth 1981, no writ); *Providence Hospital v. Truly,* 611 S.W.2d 127 (Tex.Civ.App.—Waco 1981, writ dism'd). The plaintiffs' claim that art.

5539(b) relates the trial amendment back to the time of the filing of the original petition must therefore be overruled.

■ It is well settled that in the absence of express intention to the contrary, legislation dealing with a procedural matter generally applies to pending litigation to the extent that subsequent steps in the case are to be taken under the new rule. Past steps taken under the old rule or statute will not be affected, but subsequent steps will be governed by the new rule provided that a reasonable time is afforded in which to take them. A remedy must not be denied, however, by entirely eliminating it or so limiting it as to amount to a denial of the remedy, such as by changing the time within which it may be resorted to so that it cannot as a practical matter be asserted. *Bardwell v. Anderson*, 325 S.W.2d 929 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.); *Texas Emp. Com'n. v. Bell Helicopter Intern., Inc.*, 627 S.W.2d 524 (Tex.App.—Fort Worth, *1982, writ ref'd n.r.e.)*

The legislation involved in the instant case, § 5A(b), concerns the jurisdiction of district and probate courts, and is thus procedural in nature. *See Davis v. Thomas*, 548 S.W.2d 755, 759 (Tex.Civ.App.—Tyler 1977), *rev'd on other grounds*, 553 S.W.2d 624 (Tex.1977). Section 5A(b) thus became applicable to the case at bar on August 27, 1979, and it divested the district court of jurisdiction over survival actions at that point. Since the plaintiffs' assertion of the survival action was a step in pending litigation taken *after* § 5A(b) became effective, § 5A(b) was applicable to that step. Thus, we find that at the time it was filed the survival action could only have been brought in probate court, and the district court had no jurisdiction over the action.

It should be emphasized that this is not a case where a change in procedure created by a statute unfairly prejudiced the plaintiffs by denying them the opportunity to assert a survival cause of action. At the time the plaintiffs filed their trial amendment, the district court had not had jurisdiction over survival actions for almost two

and one-half years. Thus, the plaintiffs had ample time in which to bring the action in probate court, and filing in probate court would in no way have prejudiced their ability to present their case.

■ The plaintiffs argue in the alternative, however, that even if the trial amendment asserting the survival action did not relate back to the time of the original filing, the allegations made in the original petition were sufficiently broad to include a survival action claim. Since a survival action was filed before the enactment of § 5A(b), the plaintiffs contend, the district court acquired jurisdiction over that action. They further claim that the district court retained jurisdiction, because once acquired, jurisdiction may not be divested by the enactment of § 5A(b).

Although plaintiffs' position would be correct if the original petition had in fact asserted a survival cause of action, a review of the petition reveals that this is not the case. The petition made no allegation which could even remotely be considered to relate to·a survival action; on the contrary, it specifically states that the plaintiffs are bringing "this action for the use and benefit of all persons entitled to recover for the *wrongful death* of [decedent]". [emphasis added]. Since a wrongful death action is separate and distinct from a survival action, *Landers v. B.F. Goodrich Co., supra*, the plaintiffs' original petition cannot be construed as asserting a survival cause of action.

■ As another alternative theory, the plaintiffs claim that even if § 5A(b) was in effect at the time the survival action was asserted, § 5A(b) was not intended to give the probate court jurisdiction over tort actions traditionally litigated in district court. In support of their argument, the plaintiffs rely on *Chapman v. Southern Hospitalities, Inc.*, 624 S.W.2d 320 (Tex.App.—Tyler 1981, no writ); McPherson v. Judge, *592 S.W.2d 406 (Tex.Civ.App.—Amarillo 1979, no writ) and* Wolford v. Wolford, *590 S.W.2d 769 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.).*

The issue in Chapman was whether a statutory probate court had exclusive jurisdiction over a forcible entry and detainer action filed against an estate, or whether the county court at law had concurrent jurisdiction with the statutory probate court. In holding that the county court at law did have concurrent jurisdiction, the court in *Chapman* cited § 5(c) of the Probate Code, which provides in part:

"In those counties where there is a statutory probate court ... all applications, petitions and motions regarding probate, administrations, guardianships, and mental illness matters shall be filed and heard in such courts..."

The *Chapman* court held that this language granting exclusive jurisdiction to the statutory probate court "obviously pertains to matters traditionally regarded as probate or administrative matters that relate directly to the handling of the estate," and thus does not include forcible entry and detainer actions. *Chapman*, at 322. The plaintiffs in the case at bar argue that a survival action is also not an action traditionally regarded as a probate matter, and therefore the probate court did not have exclusive jurisdiction over it. We disagree.

Because no district court was involved in the case, the *Chapman* court did not consider § 5A(b), the statute involved in the case at bar. By its express terms, § 5A(b) applies only in situations such as our case where a district court and a statutory probate court have concurrent jurisdiction over an action, and there is a question whether to bring the action in district or statutory probate court. In such a situation, § 5A(b) provides that *any* matter incident to an estate must be brought in statutory probate court rather than in district court. Section 5A(b) thus does not specifically *list* the types of actions which must be brought in statutory probate court as does § 5(c). The *Chapman* court's holding that exclusive jurisdiction of the statutory probate court is limited to traditional probate matters therefore concerns only § 5(c) and is not applicable to § 5A(b), the statute we are concerned with here.

*McPherson v. Judge* is also inapplicable to the case at bar. In *McPherson*, the court held that a constitutional county court did not have exclusive jurisdiction over a personal injury suit against an estate pending in that court, and that the action was properly brought in a district court. The *McPherson* court based its holding on § 5(b) of the Probate Code, which applies to counties with no statutory probate court and which grants essentially the same exclusive jurisdiction to the county courts as § 5(c) does to the statutory probate courts. The court interpreted § 5(b) as granting exclusive jurisdiction to county courts only with regard to matters traditionally considered probate matters, and not with regard to personal injury actions.

The *McPherson* court did not consider § 5A(b), however. That section had not been enacted at the time the *McPherson* action arose, and it would have been inapplicable at any rate because *McPherson* did not involve a question of jurisdiction between district and statutory probate court. Thus, the holding in *McPherson* is limited to a construction of § 5(b) and is not relevant to the § 5A(b) issue involved here. *See McPherson*, 592 S.W.2d at 409 n. 4.

The third case cited by the plaintiffs in support of their argument that § 5A(b) was not intended to give probate courts jurisdiction over actions not traditionally regarded as probate matters, *Wolford v. Wolford, supra,* is also inapposite to the case at bar. *Wolford* was decided under probate code provisions existing *before* the 1979 amendments, and thus does not involve § 5A(b). *Seay v. Hall, supra,* at 471.

As a final argument for their position that the survival action was properly brought in the district court, the plaintiffs claim that since no objection was made by Piper at trial that the district court did not have jurisdiction over the survival claim, Piper cannot argue the point on appeal. This contention is without merit. The error in a trial court in assuming jurisdiction when in fact none exists is a fundamental error which may be raised for the

first time on appeal. *Meek v. Mitchusson,* 588 S.W.2d 665 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.)

Having found all of the plaintiffs' arguments with regard to § 5A(b) to be without merit, we agree with the *Seay* and *Pullen* courts' holding that when proceedings regarding an estate are already pending in statutory probate court, a matter incident to an estate must be brought in the probate court rather than in the district court. We further agree with the *Seay* holding that a survival action is a matter incident to an estate within the meaning of § 5A(b). We conclude, therefore, that the trial court in the instant case erred in exercising jurisdiction over the plaintiffs' survival action. Accordingly, we reverse the portion of the judgment which awarded damages for the decedents' mental anguish immediately prior to the destruction of the aircraft. Further, we instruct that on remand of the case, the survival actions be brought in the statutory probate court in which proceedings regarding the decedents' estates were originally filed.

We next turn to a consideration of Piper's fourth, fifth, and sixth points of error, which are three alternate attacks on the validity of the award of mental anguish damages under the Survival Statute. Although these points may appear moot because of our holding that the trial court had no jurisdiction to hear the plaintiffs' survival action, we feel compelled to consider one of them because our Supreme Court has recently granted a writ of error in the case of *Seay v. Hall.* Should the *Seay* case be reversed, our holding with regard to Piper's third point of error may well be rendered invalid. In view of such a possibility, we must resolve the issue of the survival action damages on alternate grounds.

Piper contends in its fourth point of error that the trial court erred in submitting the survival action issue to the jury, because there is insufficient evidence to support the submission of such an issue. In its fifth point of error Piper complains that because the amounts found by the jury in answer to

the survival action issues are excessive, the trial court erred in failing to grant a new trial. Because we sustain Piper's sixth point of error, however, we need not consider its fourth and fifth points.

In its sixth point, Piper argues that the trial court erred in allowing the plaintiffs to dictate the survival action trial amendment into the record on the last day of trial. Piper strenuously objected at trial to the allowance of this amendment into the case, claiming that it introduced an entirely new theory of recovery which had never been pled by the plaintiffs. When the objection was overruled, Piper moved for a mistrial, or alternatively, for a continuance in order to have time to prepare a defense to the new theory of liability. The trial court, however, also overruled both of these motions.

Piper now claims on appeal that the allowance of the trial amendment and the refusal to grant a continuance constituted a clear abuse of discretion on the part of the trial court. Piper argues that the amendment amounted to a change in the legal and factual theory of recovery and thus constituted an unfair surprise. It further argues that at the very least it should have been granted a continuance in order to prepare a defense against the newly asserted survival action. Thus, Piper contends that the judgment awarding mental anguish damages on the basis of the plaintiffs' trial amendment must be reversed. We agree.

In general, TEX.R.CIV.P. 66 provides that the court shall freely allow pleadings to be amended if during the trial any defect, fault, or omission in a pleading is called to the court's attention. Rule 66 further provides, however, that an amendment may only be allowed when the objecting party fails to satisfy the court that the allowance of the amendment would prejudice him in maintaining his action or defense upon the merits. Thus, the burden of proving prejudice from the filing of a trial amendment rests on the praty resisting the filing of the amendment. *Patino v. Texas Employers Insurance Association,*

491 S.W.2d 754 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.).

The matter of granting leave to file a trial amendment is addressed to the sound discretion of the trial court, and the court's order will not be set aside in the absence of a clear showing that the court abused its discretion. *Tuck v. Tuck*, 509 S.W.2d 656 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.). It is well settled, however, that a plaintiff's trial amendment should be denied when it would change the theory of recovery after all of the evidence has been submitted. *Burroughs Corp. v. Farmers Dairies*, 538 S.W.2d 809 (Tex.Civ. App.—El Paso 1976 writ ref'd n.r.e.). This is so because a defendant has a right to assume that the case as made by the pleadings and testimony is the only case he is required to defend, and that he will not be forced to defend against allegations of which he has insufficient notice to prepare a defense. *Westinghouse Electric Corp. v. Pierce*, 153 Tex. 527, 271 S.W.2d 422 (1954). Therefore, a trial court commits an abuse of discretion when it severely prejudices a defendant's ability to defend a suit by allowing a plaintiff by trial amendment to change his theory of recovery after the submission of all the evidence. *Burroughs, supra.*

In the instant case, the trial court allowed the plaintiffs to amend their pleadings on the last day of trial to include a survival cause of action for mental anguish damages. *Landers v. B.F. Goodrich Co.*, 369 S.W.2d 33 (Tex.1963), makes clear that a survival cause of action is separate and distinct from a wrongful death action, which is the only action that the plaintiffs had asserted until the time of the trial amendment. Thus, although the trial amendment did not change the original theory of recovery as it did in the *Burroughs* case, it injected an *entirely new* theory into the action after all of the evidence had been presented. As a result, after approximately four years of preparing to defend against only a wrongful death suit, Piper was suddenly surprised with a survival action against which it was completely unprepared to defend. The harm to Piper which resulted from the surprise was further compounded by the trial court's refusal to grant Piper a continuance, which would have allowed it at least some time to prepare a defense against the survival action. We thus hold that the trial court abused its discretion in allowing the plaintiffs to assert their survival cause of action by trial amendment. Therefore, even if our holding that the trial court had no jurisdiction over the survival action is rendered invalid by a reversal of *Seay v. Hall,* the portion of the judgment awarding mental anguish damages must nevertheless be reversed. Further, the reversal on the mental anguish damage issue requires reversal on the issue of liability for mental anguish as well. *Roberts v. Mullen, supra.*

In its seventh point of error, Piper complains of the portion of the judgment which awarded wrongful death damages to the surviving spouses, children, and parents for loss of companionship, society, and affection of the decedents. Piper argues that the trial court erred in submitting issues regarding these damages to the jury, because such damages are not recoverable under the facts and law applicable to this case. Although this point of error may appear to be moot in light of our decision to reverse the entire wrongful death award, we nevertheless choose to address it. We do so because the issue of whether loss of companionship, society, and affection damages are legally recoverable in this case will certainly be presented on retrial.

In order to support its argument that loss of companionship, society, and affection damages are not recoverable in this case, Piper relies heavily on *Whittlesey v. Miller,* 572 S.W.2d 665 (Tex.1978) and *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex. 1983). In *Whittlesey,* a 1978 case, the Texas Supreme Court created a common law cause of action for loss of consortium arising out of a personal injury to a spouse. The court made clear, however, that the holding would be applicable only to *Whittlesey* itself and actions arising thereafter. *Whittlesey* at 669. In the 1983 *Sanchez*

case, the Supreme' Court modified its rule that a plaintiff may not recover damages under the Wrongful Death Act for loss of companionship, society and affection. The Court reinterpreted the Wrongful Death Act to allow a parent to recover for the loss of companionship and society as well as for mental anguish for the death of his or her minor child. *Sanchez*, at 251. With regard to the effective date of the new rule, the Court stated that the holding would apply to all cases still in the judicial process at the date of the holding as well as to all future causes.

In its opinion the Court in *Sanchez* noted that the Supreme Court had previously recognized that injuries to the familial relationship are significant injuries and thus should be compensated. In support of this contention, the *Sanchez* Court cited *Whittlesey v. Miller.* The Court stated that in *Whittlesey*, it held that loss of affection, solace, comfort, companionship, society, assistance, and sexual relations were real, direct, and personal losses not too intangible to be measured. *Sanchez*, at 252. The Court further stated that a parent's claim for loss of companionship of a child such as in *Sanchez* is "closely analogous to the loss of consortium cause of action created in *Whittlesey.*" *Sanchez* at 252.

Based upon the *Sanchez* Court's reference to *Whittlesey*, Piper contends that the *Sanchez* holding is entirely premised on *Whittlesey*. Piper argues that since *Whittlesey* originally created the cause of action for loss of companionship and society damages, *Sanchez* merely expanded the *Whittlesey* doctrine to apply to the Wrongful Death Act. It would thus be illogical, Piper concludes, to read *Sanchez* as applying to cases which arose prior to the holding in *Whittlesey.* According to Piper, the Court's statement in *Sanchez* that its holding is applicable to all cases still in the judicial process must be construed to mean all cases still in the judicial process which arose after *Whittlesey.* Since the airplane crash at issue took place before *Whittlesey* was decided, Piper claims that *Sanchez* cannot apply to this case. We need not consider Piper's argument regarding the effective date of *Sanchez*, however, because we hold that the loss of society and companionship action created in *Sanchez* is inapplicable to the case at bar.

In the *Sanchez* case, the Supreme Court did not extend the right of recovery for loss of companionship, society, and affection to beneficiaries in all wrongful death actions. Rather, the Court intended to allow such a recovery only to a parent whose minor child is wrongfully killed. The Court emphasized the limited nature of *Sanchez* by specifically describing the case as holding that "a plaintiff may recover under the Wrongful Death Statute for loss of society and companionship and damages for mental anguish for the death of his or her minor child...." *Sanchez* at 254. Further, Justice Ray stated in his concurrence on motion for rehearing that "[t]he opinion speaks only to recovery by a parent for the death of a *minor* child." [Emphasis in original]. *Sanchez* at 258. Since the case at bar does not involve the death of minor children, we find that Sanchez is inapplicable to it.

The plaintiffs, however, invite this Court to extend the holding in *Sanchez* to apply to wrongful death actions in which the decedent is not a minor child. In support of their position they cite *Missouri Pacific R. Co. v. Dawson*, 662 S.W.2d 740 (Tex. App.—Corpus Christi 1983, writ pending), in which the Corpus Christi Court of Appeals expanded *Sanchez* by holding that loss of consortium damages are recoverable under the Wrongful Death Act. Although the Corpus Christi Court recognized that *Sanchez* expressly dealt only with cases involving minor children, it nevertheless interpreted *Sanchez* as indicating that injuries to familial relationships in general are worthy of compensation. *Missouri Pacific* at 742. Our Court, however, declines to adopt such a broad construction of *Sanchez*.

As previously stated, the Supreme Court in *Sanchez* has created a new element of damages recoverable under the Wrongful Death Act, but has clearly limited the avail-

ability of these damages to cases where a parent brings a wrongful death action for the loss of a minor child. The Court thus declined to adopt the broad holding of *Stanford v. McLean Trucking Co.*, 506 F.Supp. 1252 (E.D.Tex.1981). In *Stanford,* a federal court determined that "if and when the question is presented to the Supreme Court of Texas, it will agree that the Texas Wrongful Death Act does not preclude recovery for elements of damage embraced by the concept of loss of society and companionship." 506 F.Supp. at 1258. Although *Sanchez* presented the Supreme Court with an opportunity to adopt the holding and allow *all* wrongful death beneficiaries to recover for loss of society and companionship, it refused to do so and failed even to mention *Stanford.* Thus, according to the Supreme Court the present state of the law with regard to loss of society and companionship damages in wrongful death actions is that such damages are recoverable only by a parent for the death of a minor child.

In general, Courts of Appeals are bound by the decisions of the Supreme Court in construction and application of statutory as well as common law. *General Accident Fire & Life Assur. Corp. v. Coffman,* 326 S.W.2d 287 (Tex.Civ.App.—Waco 1959, writ ref'd n.r.e.). Since the Supreme Court has made the law clear with respect to loss of society and companionship damages under the Wrongful Death Act, it is the duty of our Court to follow this law until such time as it is changed by the Supreme Court. *Schooler v. Tarrant County Medical Society,* 457 S.W.2d 644 (Tex.Civ.App.—Fort Worth 1970, no writ). It would therefore be improper for our Court to usurp the authority of the Supreme Court by expanding *Sanchez* to allow loss of companionship and society damages in *all* wrongful death cases.

We conclude that loss of society, companionship and affection damages are recoverable under the Wrongful Death Act only in cases where a parent-plaintiff is seeking recovery for the death of his or her minor child. Any attempt to allow other beneficiaries to recover such damages in wrongful death cases would be an unwarranted expansion of *Sanchez.* Thus we hold that the trial judge in the instant case erred in allowing the parents, spouses and children to recover damages for the loss of society, companionship and affection of the adult decedents who were killed in the crash. We further hold that such damages may not be considered on retrial of the case.

Having considered all of Piper's points of error, we must now address the plaintiffs' single crosspoint of error. In that crosspoint, the plaintiffs contend that the trial court improperly denied their motion for prejudgment interest from the date of the crash until the date judgment was entered. They argue that although no Texas case has specifically held that prejudgment interest may be awarded in a wrongful death action, such interest may nevertheless be properly awarded under Texas law. Although this crosspoint also appears moot, because of our reversal of the wrongful death action it will doubtless be raised on retrial, and in the interest of judicial economy we choose to address the issue.

Texas courts have established a two-prong test for determining whether prejudgment interest may be awarded in tort cases. Such interest may be awarded when (1) the measure of recovery is fixed by conditions existing at the time of the injury, and (2) the amount of damages is determinable by fixed rules of evidence and known standards of value. *Maxey v. Texas Commerce Bank of Lubbock,* 571 S.W.2d 39 (Tex.Civ.App.—Amarillo, 1978), *writ ref'd n.r.e. per curiam,* 580 S.W.2d 340 (Tex.1980). If these conditions are met, prejudgment interest will be awarded even in cases where liability is contested and the amount of damages cannot be ascertained short of a jury verdict. *Beck v. Lawler,* 422 S.W.2d 816 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.).

The first prong of the test precludes an award of prejudgment interest when the measure of recovery may change

due to the occurrence of events after the date of the injury. *See, e.g., Travelers Indemnity Co. v. Pollard Friendly Ford Co.*, 512 S.W.2d 375 (Tex.Civ.App.—Amarillo 1974, no writ) (prejudgment interest disallowed because the measure of recovery for tornado damage to a business depended on conduct of the business after the tornado). The second prong of the test requires that in order for prejudgment interest to be awarded, there must be some reasonably uniform standard or rule which the trier of fact may use to determine the amount of the damage. Thus, a court may not award prejudgment interest if damages are uncertain and cannot be established without speculation on the part of the fact finder. *Exxon Corp. v. Middleton*, 613 S.W.2d 240 (Tex.1981).

▮ In a wrongful death action, the type of case involved here, the measure of recovery is the present monetary value of the benefits that the plaintiff had a reasonable expectation of receiving from the deceased had he not been killed. 17 Tex. Jur.2d *Death by Wrongful Act* § 43 (1960). These benefits include not only monetary contributions which would have been made by the decedent to the beneficiaries, but also intangible contributions such as services, advice, counsel, nurture, and care, *City of Austin v. Selter*, 415 S.W.2d 489 (Tex. Civ.App.—Austin 1967, writ ref'd n.r.e.). The measure of recovery in a wrongful death action is limited to these factors, and therefore cannot be changed by occurrences which take place after the death of the decedent.

The amount of damages in a wrongful death case, however, clearly cannot be determined by any fixed rules of evidence or known standards of value. It is difficult to imagine damages more uncertain in amount than those which must be calculated in a wrongful death case. The jury must determine not only what the future earnings of the deceased would have been had he lived, but must also decide what portion of those earnings he would have given to the beneficiaries. In addition, the jury must estimate in monetary terms the

services, advice, nurture, and care which the decedent would have contributed to the beneficiaries. Such calculations require a great amount of discretion on the part of the jury and must be made on a case by case basis. *Lee v. Andrews*, 545 S.W.2d 238 (Tex.Civ.App.—Amarillo 1977, writ dism'd).

▮ Therefore, wrongful death actions fail the second prong of the test, and prejudgment interest may not be awarded in such cases. We hold that in the event that the plaintiffs are awarded damages on retrial, the trial court must not allow prejudgment interest on the award.

We have considered all of the arguments regarding the disposition of the main action, and now turn to intervenor U.S. Fire's arguments regarding the apportionment of costs and attorneys' fees. U.S. Fire raises six points of error, all of which attack the trial court's "Order Apportioning Attorneys' Fees and Costs between Plaintiff and Intervenor." In view of our reversal of the entire judgment both as to liability and damages, however, we decline to consider U.S. Fire's points of error.

It is axiomatic that the issue of apportionment of attorneys' fees between the plaintiffs' and U.S. Fire's attorneys will only arise if the plaintiffs and U.S. Fire prevail on the liability issue on retrial. If these parties do prevail, it will be the responsibility of the trial court to apportion the attorneys' fees and costs according to the relative amount of work performed and costs expended by each party's attorney. *See generally Houston General Ins. Co. v. Metcalf*, 642 S.W.2d 79 (Tex.Civ.App.—Tyler 1982, writ ref'd n.r.e.). Since we cannot at this stage in the litigation determine either the outcome of a retrial, or the amount of time and expense which will be expended by the parties' attorneys, we will not hinder the trial court by undertaking to anticipate the proper apportionment of costs and fees.

The judgment is reversed and remanded for a new trial as to liability and damages, with the following instructions:

(1) The survival actions asserted by the plaintiffs pursuant to article 5525 must be brought in the statutory probate court in which proceedings regarding the decedents' estates are pending.

(2) The plaintiffs may not allege a cause of action for damages resulting from the loss of companionship, society, or affection of the decedents.

(3) In the event that the plaintiffs prevail and are awarded damages, they may not recover prejudgment interest on those damages from the date of the crash until the date judgment is entered.

It is so ordered.